593 So.2d 180 (1991)
Richard L. DUGGER, etc., Petitioner,
v.
Jimmie WILLIAMS, Respondent.
No. 76604.
Supreme Court of Florida.
November 27, 1991.
Robert A. Butterworth, Atty. Gen. and Frederick J. Schutte IV, Asst. Atty. Gen., and Elaine D. Hall, Asst. Gen. Counsel, Dept. of Corrections, Tallahassee, for petitioner.
Jimmie Williams, in pro. per.
Peter P. Sleasman, Co-Counsel of Florida Institutional Legal Services, Inc., Gainesville, for respondent.
PER CURIAM.
We have for review Williams v. Dugger, 566 So.2d 819 (Fla. 1st DCA 1990), which certified the following question of great public importance:

*181 Whether the 1986 changes in § 944.30, Florida Statutes, effective October 1, 1986, are ex post facto when applied to prisoners convicted of capital felonies prior to the effective date of the statute.
Id. at 822. We have jurisdiction. Art. V, § 3(b)(4), Fla. Const.
Jimmie Williams was indicted for first-degree murder in 1976. In February 1978 he was sentenced to life in prison with a minimum mandatory term of twenty-five years. In November 1987, Williams filed a request for executive clemency. The request summarily was denied. After exhausting administrative remedies, Williams appealed to the First District. He argued that under section 944.30, Florida Statutes (1975), he was entitled to receive a mandatory recommendation for executive clemency from the Department of Corrections (DOC). DOC, on the other hand, argued that a 1986 law had amended the statute so that it no longer applied to capital felons such as Williams, and that there was no constitutional impropriety in applying these amendments to the present case.
The district court disagreed with DOC and found that the statute was ex post facto as applied to Williams. The district court then certified the question to this Court.
In Florida, a law or its equivalent violates the prohibition against ex post facto laws if two conditions are met: (a) it is retrospective in effect; and (b) it diminishes a substantial substantive right the party would have enjoyed under the law existing at the time of the alleged offense. Art. I, § 10, Fla. Const.; Waldrup v. Dugger, 562 So.2d 687, 691 (Fla. 1990). There is no requirement that the substantive right be "vested" or absolute, since the ex post facto provision can be violated even by the retroactive diminishment of access to a purely discretionary or conditional advantage. Waldrup, 562 So.2d at 692. Such might occur, for example, if the legislature diminishes a state agency's discretion to award an advantage to a person protected by the ex post facto provision. This is true even when the person has no vested right to receive that advantage and later may be denied the advantage if the discretion otherwise is lawfully exercised. Id. In other words, the error occurs not because the person is being denied the advantage (since there is no absolute right to receive it in the first place), but because the person is denied the same level of access to the advantage that existed at the time the criminal offense was committed.[1]Id.
As is obvious from this discussion, it is too simplistic to say that an ex post facto violation can occur only with regard to substantive law, not procedural law. Clearly, some procedural matters have a substantive effect. Where this is so, an ex post facto violation also is possible, even though the general rule is that the ex post facto provision of the state Constitution does not apply to purely procedural matters.
In Waldrup, for example, the violation occurred precisely because inmates were denied access to a discretionary procedure by which more advantageous amounts of gain-time possibly might be awarded, thereby reducing the inmates' prison terms. The Waldrup case did not turn on the fact that the inmates lacked any absolute right to this gain-time and later could be lawfully denied it. Rather, the case turned on the fact that the inmates clearly were denied the possibility of receiving the more advantageous awards. Id.
*182 In the present case, there is no dispute that the law applied to Williams is retrospective in effect, since the statute expressly applies "to any inmate in custody on or after July 1, 1987," subject to an exception not relevant here. § 944.30, Fla. Stat. (Supp. 1986). The real question is whether the 1986 amendments had the effect of diminishing a substantial substantive advantage that Williams would have enjoyed under the law existing at the time he committed his offense.
The relevant statute in effect when Williams' crime took place was as follows:
Any prisoner who is sentenced to life imprisonment, who has actually served 10 years and has sustained no charge of misconduct and has a good institutional record, shall be recommended by the [DOC] for a reasonable commutation of his sentence ... to a term for years, then such prisoner shall have the benefit of the ordinary commutation, as if the original sentence was for a term [of] years, unless it shall be otherwise ordered by the Board of Pardons.
§ 944.30, Fla. Stat. (1975) (emphasis added). As amended in 1986 and before being repealed in 1988, the same statutory section stated:
Any person sentenced to the custody of the department for a term in excess of 40 years, up to and including life imprisonment, for a noncapital felony and who has served 10 calendar years of such sentence with the cumulative loss of no more than 30 days of gain-time may be recommended by the Secretary of Corrections for an investigation pursuant to s. 947.25.
§ 944.30(1), Fla. Stat. (Supp. 1986) (emphasis added).
During oral argument, counsel for DOC called to the Court's attention one further complication: The Rules of Executive Clemency applicable to Williams were changed by the Governor and Cabinet in 1985, after the crime in question was committed. Under both the pre-1986 statute and the pre-1985 Rules submitted to this Court by DOC, it appears that Williams would have received the following upon meeting the conditions of section 944.30: (a) DOC's mandatory recommendation for commutation of sentence, § 944.30, Fla. Stat. (1975); (b) an investigation by the Parole and Probation Commission; and (c) eventual placement on the agenda of the Executive Clemency hearing. Fla. Admin. Code Ann. tit. 27 app.
As supplemental authority, DOC has presented the new Rules of Executive Clemency that DOC's counsel stated were approved in 1985. Under these rules, the DOC recommendation for a commuted sentence remains a necessary element before Williams' case can be heard by the Governor and Cabinet under the provisions of section 944.30. However, in addition, Williams must obtain a waiver from the Governor and at least three members of the Cabinet. Without both the DOC recommendation and the waiver, there is no possibility of Williams obtaining either a hearing or a commutation of his sentence under section 944.30. Fla.R.Executive Clemency 11(C)(3) (not published in Fla. Admin. Code).
Thus, no matter which of these clemency rules is applicable, we must find that an ex post facto violation exists. Read together, the applicable statutes and both versions of the Rules of Executive Clemency clearly contemplate that Williams has no possibility whatsoever of obtaining the hearing provided by section 944.30 before the Governor and Cabinet  and thus no possibility of a commuted sentence pursuant to the statutory mechanism  unless he at least obtains the DOC recommendation promised him by the pre-1986 version of section 944.30.
This plainly is a substantial substantive disadvantage that is being retrospectively applied to Williams, in violation of Florida law. Art. I, § 10, Fla. Const.; see Waldrup. Indeed, it is directly analogous to the denial of access to the gain-time procedure that occurred in Waldrup. Accordingly, on remand, the trial court shall determine if Williams met the requirements of the pre-1986 version of section 944.30. If so, then Williams is entitled to mandamus ordering DOC to comply with the statute. Art. I, § 10, Fla. Const.
*183 In reaching this conclusion, we disagree with the argument that the statute in question is a nullity because it impinges upon the executive clemency power. Clearly this is not true. On its face, the statute does no more than direct DOC to recommend a commutation of sentence. This is entirely within the legislative prerogative, since DOC was created by the legislature. § 20.315, Fla. Stat. (Supp. 1990). The executive still retains full discretion, subject only to its own Rules of Executive Clemency and the state Constitution, to accept or reject the recommendation. There thus is no usurpation of executive authority here.
For the foregoing reasons, the result reached by the district court below is approved. We remand to the trial court for further proceedings consistent with the views expressed here.
It is so ordered.
SHAW, C.J., and BARKETT, GRIMES and HARDING, JJ., concur.
KOGAN, J., concurs specially with an opinion, in which BARKETT, J., concurs.
McDONALD, J., dissents with an opinion, in which OVERTON, J., concurs.
KOGAN, Justice, specially concurring.
I agree with the majority opinion, as far as it goes. However, I also would confront the purely legal question of whether amendments to the Rules of Executive Clemency may be ex post facto as applied to Williams.[2] While I agree that this Court need not resolve the factual aspects of this question today, I do believe we should issue guidelines sufficient for the trial court to resolve the issue on remand. As written, the majority opinion simply delays this question until another appeal is taken, thus postponing justice, increasing the cost of litigation, and wasting judicial resources.
During oral argument, counsel for DOC argued that the 1985 amendments to the Rules of Executive Clemency will be applied to Williams, thus barring any possibility of a hearing on his claim. If this is true, Williams will have no possibility of obtaining a commutation of his sentence unless he obtains a waiver approved by the Governor and at least three Cabinet members. Both parties essentially agree that such a waiver is unlikely.
For the same reasons expressed in the majority opinion, this state of affairs also will constitute a violation of the ex post facto provision to the extent that such a waiver procedure was not mandatory under the Rules of Executive Clemency in effect at the time the crime was committed.[3] Art. I, § 10, Fla. Const. If the legislature cannot change the law to deny Williams this right, then the executive cannot change its own published rules to achieve the same forbidden result.
It is true that clemency falls peculiarly within the prerogative of the executive branch. In re Advisory Opinion of the Governor, 334 So.2d 561, 562 (Fla. 1976). Neither the courts nor the legislature can encroach upon that power. However, even the executive must exercise that power in a manner that comports with Florida's Declaration of Rights, including the ex post facto provision of article I, section 10 of the Florida Constitution. By its own terms, article I, section 10 is not limited in application solely to one particular branch of government, but to all the laws of the state however they might be created. It would be absurd to think the framers intended to forbid retroactive legislative acts, but authorized the executive (acting through the Cabinet) to do the precise same thing merely by enacting a rule.
Thus, by establishing Rules of Executive Clemency, the executive department has bound itself to apply them in a manner consistent with the ex post facto provision and the other provisions of the state Constitution. *184 If the rules imposed no substantial substantive disadvantage on Williams when he committed his crime, then the rules may not be changed to impose such a disadvantage today. Art. I, § 10, Fla. Const.
This is true notwithstanding the statement in the Rules that "nothing contained herein can or is intended to limit the authority given to the Governor or the Cabinet in the exercise of this constitutional prerogative." Clearly, neither the judicial nor legislative branches are limiting the executive clemency authority. The only limits imposed on that authority are those that have been created by the Governor and Cabinet themselves in light of the ex post facto provision. Art. I, § 10, Fla. Const. If the waiver provision was not mandatory when Williams' crime was committed, then it cannot be made mandatory simply by the Cabinet reserving to itself the right to arbitrarily violate the rule against ex post facto laws.[4]
However, I expressly refrain from deciding whether the Rules of Executive Clemency are being applied in this case so as to violate the ex post facto provision of the Florida Constitution. I recognize that some factual questions still remain about the exact nature of the Rules of Executive Clemency in effect when Williams committed his crime. Those questions should be fully addressed through proper fact-finding. Thus, on remand, the trial court should determine whether Williams  once he has obtained the DOC recommendation  would have been entitled to a hearing under the rules in effect when the crime was committed. In other words, does Williams presently fall within a class of persons who, at the time Williams' crime was committed, were guaranteed the right to some type of clemency hearing under the then-existing Rules of Executive Clemency. If so, the trial court must find an ex post facto violation. Art. I, § 10, Fla. Const.
BARKETT, J., concurs.
McDONALD, Justice, dissenting.
Clemency is the exclusive prerogative of the executive branch of government. Sullivan v. Askew, 348 So.2d 312 (Fla. 1977). The legislature clearly has no authority to enact substantive legislation in reference to clemency. I question its right to even pass procedural legislation, however, if this can be done, procedural changes can be made without violating one's rights. At best, section 944.30, Florida Statutes (Supp. 1986), modified the procedure for some to seek clemency. No substantive rights were involved and, thus, Williams cannot complain. He has no vested right to the initial legislatively created procedure of the department recommending him for consideration for clemency. I would quash the opinion under review.
OVERTON, J., concurs.
NOTES
[1] Thus, the ex post facto provision remains unoffended if, at the time the crime was committed, the same level of access to the advantage was not guaranteed to a class of persons that presently includes the defendant. Our opinion in Dugger v. Rodrick, 584 So.2d 2 (Fla. 1991), is distinguishable from the present case precisely because it dealt with such a speculative access to an "advantage." In Rodrick, the issue was provisional credits given to inmates solely to relieve prison overcrowding, which incidentally reduced the prison terms of the inmates. Such credits are wholly contingent upon outside variables that had no relation to any class the inmates might fall within. Therefore, this particular "advantage" was guaranteed to no specific class of inmates at the time their crimes were committed and could not give rise to an ex post facto violation.
[2] The issue was raised by counsel for DOC when she called to this Court's attention the fact that amendments had been made that will affect Williams adversely. By doing so, counsel opened the door to this issue.
[3] I have relied entirely on the representations made by DOC's counsel at oral argument in reaching these conclusions. As noted below, I am not deciding that an ex post facto violation actually has occurred here. This is a matter the trial court must decide on remand.
[4] No one seriously would contend, for example, that the legislature can avoid the dictates of the ex post facto provision merely by including a statement saying that a particular statute is not subject to article 1, section 10, Florida Constitution.