690 So.2d 1234 (1996)
Melvin TROTTER, Appellant,
v.
STATE of Florida, Appellee.
No. 82142.
Supreme Court of Florida.
December 19, 1996.
Rehearing Denied April 4, 1997.
*1235 James Marion Moorman, Public Defender and Douglas S. Connor, Assistant Public Defender, Tenth Judicial Circuit, Bartow, for Appellant.
Robert A. Butterworth, Attorney General; and Robert J. Landry and Candace M. Sabella, Assistant Attorneys General, Tampa, for Appellee.
PER CURIAM.
We have on appeal a trial court order imposing the death penalty upon Melvin Trotter following resentencing. We have jurisdiction. Art. V, § 3(b)(1), Fla. Const. We affirm.
Trotter was convicted of first-degree murder for stabbing a grocery store owner to death during a robbery on June 16, 1986. The facts are set out fully in Trotter v. State, 576 So.2d 691 (Fla.1990). In conformity with the jury's nine-to-three vote, the trial court imposed the death penalty after finding four aggravating circumstances,[1] two statutory mitigating circumstances,[2] and several nonstatutory mitigating circumstances.[3] Trotter raised eight issues on appeal.[4]
*1236 This Court affirmed the conviction but reversed the death sentence on the basis of a single error: The trial court found as an aggravating circumstance that Trotter had been on community control at the time he committed the murder. We held that community control was not an aggravating circumstance authorized by statute and remanded for resentencing before a jury.
At resentencing, the trial court followed the jury's eleven-to-one vote and again imposed the death penalty after finding four aggravating circumstances,[5] two statutory mitigating circumstances,[6] and several nonstatutory mitigating circumstances.[7] Trotter raises ten issues in his present appeal.[8]
Trotter claimsas he did in his original appealthat the trial court erred in finding that community control is an aggravating circumstance. We agreed with Trotter originally, but in light of subsequent legislation making clear legislative intent, we now disagree. At the time of Trotter's initial appeal, the capital sentencing statute was ambiguousit failed to mention community control specifically, speaking instead of "sentence of imprisonment" broadly:
(5) AGGRAVATING CIRCUMSTANCES. Aggravating circumstances shall [include] the following:
(a) The capital felony was committed by a person under sentence of imprisonment.
§ 921.141, Fla. Stat. (1985).
Although the phrase "under sentence of imprisonment" was read by two members of this Court in Trotter as embracing community control,[9] the majority felt compelled under traditional rules of statutory construction to give the phrase a strict construction:
As his fifth point, appellant asserts that it was error to consider his violation of community control as an aggravating factor in sentencing. We agree. Subsection 948.10(1), Florida statutes (1985), provides that community control is "an alternative, community-based method to punish an offender in lieu of incarceration." Moreover, we have held that violation of probation is not an aggravating circumstanceprobation is not equivalent to being under sentence of imprisonment, for the appellant was not incarcerated. Penal statutes must be strictly construed in favor of the one against whom a penalty is to be imposed. Because the trial judge erroneously treated violation of community control as an aggravating factor in sentencing, and because there were four aggravating and four mitigating circumstances, we remand to a jury for resentencing.
*1237 Trotter, 576 So.2d at 694 (footnote and citations omitted).
Immediately following our decision in Trotter, the legislaturein its next regular sessionamended section 921.141(5)(a) to specifically address community control:
(5) AGGRAVATING CIRCUMSTANCES. Aggravating circumstances shall [include] the following:
(a) The capital felony was committed by a person under sentence of imprisonment or placed on community control.
§ 921.141, Fla. Stat. (1991).
Trotter claims that the trial court's use of community control as an aggravating circumstance constitutes an ex post facto violation because his crime and initial sentencing took place before the above amendment was enacted. We disagree and find no violation, just as we have found no violation in every other case where an aggravating circumstance was applied retroactivelyeven on resentencing. See, e.g., Zeigler v. State, 580 So.2d 127, 130 (Fla.1991) (no ex post facto violation in applying "cold, calculated, and premeditated" aggravating circumstance retroactively on resentencing where Zeigler committed the crime and was originally sentenced before the circumstance was enacted); Hitchcock v. State, 578 So.2d 685, 693 (Fla. 1990) (no ex post facto violation in applying "sentence of imprisonment" aggravator retroactively on resentencing where Hitchcock committed the crime and was originally sentenced before this Court held that parole is embraced within the circumstance). See also Jackson v. State, 648 So.2d 85, 92 (Fla.1994) (no ex post facto violation in applying "victim was a law enforcement officer" aggravator retroactively).
Custodial restraint has served in aggravation in Florida since the "sentence of imprisonment" circumstance was created, and enactment of community control simply extended traditional custody to include "custody in the community." See § 948.001, Fla. Stat. (1985). Use of community control as an aggravating circumstance thus constitutes a refinement in the "sentence of imprisonment" factor, not a substantive change in Florida's death penalty law.
Trotter further contends that application of this circumstance to his case constitutes a violation of the "law of the case" doctrine because this Court has already decided this issue in his favor. See generally Brunner Enters., Inc. v. Department of Revenue, 452 So.2d 550, 552 (Fla.1984). Again, we disagree. An intervening act of the legislature refining a portion of Florida's death penalty statute may be sufficiently exceptional to warrant modification of the law of the case.
In light of the specificity and promptness of the 1991 amendment to section 921.141(5)(a), and in view of our prior caselaw giving retroactive application to other aggravating circumstances effecting a refinement in the law, reliance on Trotter would result in manifest injustice to the people of Florida by perpetuating an anomalous and incorrect application of the capital sentencing statute.
We recede from our ruling in Trotter on the use of community control as an aggravating circumstance and note that this renders Trotter's original trial error-free. See Trotter (reversal was based on single error).
We find the remainder of Trotter's present claims to be without merit. Accordingly, we affirm Trotter's current sentence of death.
It is so ordered.
OVERTON, SHAW, GRIMES, HARDING and WELLS, JJ., concur.
ANSTEAD, J., dissents with an opinion, in which KOGAN, C.J., concurs.
ANSTEAD, Justice, dissenting.
In appellant's prior appeal, this Court explicitly held that the aggravating circumstance of "under sentence of imprisonment" did not encompass a defendant who was on community control at the time of the homicide. Trotter v. State, 576 So.2d 691, 694 (Fla.1990). We vacated appellant's sentence and remanded the case for resentencing without consideration of the "imprisonment" *1238 aggravator. Id.[10] Having expressly and correctly held that the defendant's community control status could not be used against him, we cannot now constitutionally apply that aggravator to the appellant. The community control aggravator did not exist when appellant committed the crime at issue.
Express provisions of the constitutions of the United States and of the State of Florida prevent the state from changing the law and then applying the new law to past events.
The United States Constitution expressly prohibits the states from passing ex post facto laws. Similarly, article I, section 10, of the Florida Constitution expressly declares:
No bill of attainder, ex post facto law or law impairing the obligation of contracts shall be passed.
The prohibition against ex post facto laws is universally accepted in all civilized societies and is easily understood and applied. Further, this prohibition has been consistently and rigorously applied to bar the retroactive application of penal laws.
The United States Supreme Court has invoked the ex post facto provisions to prohibit not only the retroactive application of statutes defining or creating new crimes, but also to changes in statutory schemes for punishment like Florida's sentencing guidelines. Miller v. Florida, 482 U.S. 423, 434, 107 S.Ct. 2446, 2453, 96 L.Ed.2d 351 (1987). In extending the application of ex post facto provisions to Florida's statutory parole scheme, the Court has declared that these provisions serve to "uphold[] the separation of powers by confining the legislature to penal decisions with prospective effect and the judiciary and executive to applications of existing penal law." Weaver v. Graham, 450 U.S. 24, 29 n. 10, 101 S.Ct. 960, 964 n. 10, 67 L.Ed.2d 17 (1981). This Court has also rigorously upheld the constitutional ex post facto provisions. We have held that the state constitutional provision against ex post facto laws applies if a law "(a) ... is retrospective in effect; and (b) ... diminishes a substantial substantive right the party would have enjoyed under the law existing at the time of the alleged offense." Dugger v. Williams, 593 So.2d 180, 181 (Fla.1991). We held in Dugger that Williams could not be denied the advantage of a recommendation for executive clemency by the Department of Corrections if he met the requirements existing under the statute when his crime took place.
The application of these ex post facto provisions is clear in this case. We have expressly held that aggravating circumstances "actually define those crimes ... in which the death penalty is applicable." State v. Dixon, 283 So.2d 1, 9 (Fla.1973), cert. denied, 416 U.S. 943, 94 S.Ct. 1950, 40 L.Ed.2d 295 (1974). There can be no doubt under our holding in Dixon that aggravating circumstances are part of the substantive law of capital crimes. Obviously, redefining a death penalty crime is a far more substantial change in the law than the changes involved in Miller, Weaver, and Dugger. Further, it is crystal clear that the legislature changed the substantive death penalty law when it amended section 921.242(5)(a) after our decision in Trotter, and expressly added "community control" as an aggravating circumstance. It is apparent that being on community control was not part of the definition of a death penalty crime as described in Dixon at the time of the homicide involved herein. Hence, *1239 the new statutory aggravator of "community control" cannot constitutionally be applied to Trotter at this late stage.[11]
In accord with our own prior decision in this case, and with the ex post facto provisions of our federal and state constitutions, we are bound to remand this case with express directions for sentencing before a new jury and judge and without consideration of the "community control" aggravating circumstance.
KOGAN, C.J., concurs.
NOTES
[1] The crime was committed while the defendant was under sentence of imprisonment; the defendant had previously been convicted of a felony involving use or threat of violence; the crime was committed while the defendant was engaged in the commission of a robbery; and the crime was especially wicked, evil, atrocious, and cruel.
[2] The defendant was under the influence of mental and emotional disturbance; and the capacity of the defendant was substantially impaired.
[3] The defendant has a below average I.Q. and a history of family and developmental problems; and the defendant is remorseful.
[4] The court failed to excuse four jurors for cause; the court failed to investigate extraneous influences on the jury; the court refused to disqualify the prosecutor; the court removed a particular juror for cause; the court counted community control as an aggravating circumstance; the court refused to admit Trotter's artwork in mitigation; the instruction on heinous, atrocious, or cruel was vague; the evidence failed to support the court's finding that the murder was heinous, atrocious, or cruel.
[5] Trotter was on community control at the time of the murders; Trotter had been convicted of a prior violent felony; the crime took place while Trotter was engaged in a robbery and was for pecuniary gain (although the court listed these two circumstances separately in its written order, it stated at sentencing that it considered the two as a single factor); and the murder was especially wicked, evil, atrocious and cruel.
[6] Trotter was under the influence of extreme mental and emotional disturbance; and the capacity of the defendant was substantially impaired.
[7] Trotter has a below average I.Q., has both family and developmental problems, and has a disadvantaged background; Trotter may have suffered from a frontal lobe brain disorder; the defendant is remorseful; and other nonstatutory factors.
[8] The court counted community control as an aggravating circumstance; victim impact evidence is impermissible in general; admission of victim impact evidence here was improper; Trotter should have been allowed to raise the validity of his prior conviction; the court failed to investigate Trotter's claim of racial bias in seeking the death penalty; the court denied Trotter's challenges for cause; the court denied a particular challenge for cause; the court allowed evidence of a nonstatutory aggravating circumstance to be introduced; the prosecutor made improper comments; and the sentencing order is deficient.
[9] See Trotter v. State, 576 So.2d at 691, 696 (Fla.1990) (McDonald, J., concurring in part, dissenting in part with Grimes, J., concurring) ("I am satisfied that one sentenced to community control is under sentence of imprisonment within the definition of subsection 921.141(5)(a).")
[10] There is nothing illogical or unclear about our prior ruling, and nothing ambiguous about the term "imprisonment." We held that imprisonment does not include community control. In addition to the plain meaning of "imprisonment," a term that speaks for itself, our prior opinion cited section 948.10(1), Florida Statutes (1985), which expressly defines community control as an alternative to incarceration. Trotter, 576 So.2d at 694. As further evidence of the soundness of our decision, we need look no further than our own seminal case on the present death penalty statute. In State v. Dixon, 283 So.2d 1 (Fla.1973), cert. denied, 416 U.S. 943, 94 S.Ct. 1950, 40 L.Ed.2d 295 (1974), we defined this aggravator as a "capital felony committed by a prisoner." Id. at 9. That the legislature would have singled out killings occurring in prison, or a killing by an escaped prisoner, by providing such an aggravator is self-explanatory.

The correctness of our holding becomes even more apparent when we consider that community control did not even exist when the imprisonment aggravator was initially enacted in 1972. See Trotter, 576 So.2d at 695 (McDonald, J., dissenting)(community control created in 1983). The 1972 legislature could hardly have anticipated the creation of community control some eleven years in advance.
[11] Another way to analyze this issue is to consider our law requiring the existence of at least one aggravating circumstance before the death penalty can be imposed. The majority opinion would uphold the imposition of the death penalty based upon one aggravator, even though that aggravator did not exist at the time the crime was committed.