[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 1047 
Melvin Trotter appeals an order of the circuit court denying his motion for post-conviction relief under Florida Rule of Criminal Procedure 3.850 and an order concluding that he is not mentally retarded. He also petitions the Court for a writ of habeas corpus. We have jurisdiction. See art. V, § 3(b)(1), (9), Fla. Const. As explained below, we affirm the circuit court's denial of Trotter's postconviction motion and the order on mental retardation, and we deny Trotter's habeas petition.
 I. FACTS AND PROCEDURAL HISTORY
In 1986, Trotter, in the course of robbing a store, murdered the seventy-year-old shop owner. She died from the seven stab wounds he inflicted, one of which disemboweled her. Trotter v.State, 576 So.2d 691, 692 (Fla. 1990). Upon his conviction for robbery and first-degree murder, the court imposed a death sentence. On appeal, we affirmed Trotter's convictions but vacated the sentence and remanded for a new penalty phase because the trial court erred in treating his violation of community control as an aggravating factor. Id. at 694.[1]
Following the new penalty phase, eleven jurors recommended death, and the court imposed that sentence after finding four aggravating factors and two statutory, and several nonstatutory, mitigating factors. Trotter v. State, 690 So.2d 1234, 1236
(Fla. 1996), cert. denied, 522 U.S. 876, 118 S.Ct. 197,139 L.Ed.2d 134 (1997).[2] On appeal, Trotter raised ten issues, including a contention *Page 1048 
that the trial court again erred in using his community control status as an aggravator. Id. at 1237.[3] We affirmed the sentence, finding that subsequent statutory changes permitting use of such status as an aggravator constituted a "refinement" of the law that applied retroactively. Id. Without discussion, we found all other issues meritless. Id.
Subsequently, Trotter filed a motion for postconviction relief under rule 3.850.[4] The trial court held an evidentiary hearing on four claims, following which it issued an order denying all claims.
Trotter filed this appeal and petitioned for writ of habeas corpus. Following this Court's promulgation of Florida Rule of Criminal Procedure 3.203, providing a procedure for determining mental retardation in death penalty cases, we granted Trotter's motion to relinquish jurisdiction. Pursuant to that rule, Trotter filed a successive postconviction motion in the circuit court for determination of mental retardation and waived an evidentiary hearing. The attorneys filed written reports and closing arguments in lieu of live proceedings, and the parties stipulated to the court taking judicial notice of the testimony presented at Trotter's 2002 postconviction hearing. The court also took judicial notice of Trotter's trial and resentencing proceedings. The court determined that Trotter was not mentally retarded. In his supplemental brief, Trotter appeals that order as well. We now address the issues Trotter raises in his initial and supplemental briefs.
 II. THE ISSUES ON APPEAL
Trotter raises issues regarding his claim that he is mentally retarded. He also raises several claims on appeal from the denial of his postconviction motion. Below we address two issues regarding mental retardation. We then address three issues from his original appeal.
 A. Mental Retardation Claims
We first address two issues Trotter raised in his supplemental brief regarding *Page 1049 
his claim of mental retardation: (1) that the circuit court erred in determining Trotter was not mentally retarded; and (2) that his death sentence is not proportional.[5] We address these issues in turn.
 1. Whether Trotter is Mentally Retarded
To establish mental retardation, a defendant must demonstrate all three of the following: (1) significantly subaverage general intellectual functioning; (2) concurrent deficits in adaptive behavior; and (3) manifestation of the condition before age eighteen. Fla.R.Crim.P. 3.203(b).[6] In the proceedings held on remand, the circuit court considered the testimony or reports of six mental health experts: Drs. Calvin Pinkard, Harry Krop, Bill Mosman, Sidney Merin, Antolin Llorente, and Michael Gamache. The circuit court concluded that Trotter did not meet any of the three prongs for determining mental retardation by either the preponderance of the evidence or by clear and convincing evidence. Trotter contends this is error. We disagree and find that competent, substantial evidence supports the court's determination.
First, no expert who tested Trotter's IQ as an adult, including those who also examined his adaptive skills, found that Trotter meets the definition for mental retardation. They reported IQ scores ranging from 72 to 91. The court found that variances in Trotter's IQ subtest scores were inconsistent with mental retardation. Trotter's scores on some subtests were normal, and score variances were explained by his not starting school until age nine and the deficient environment in which he grew up. The testimony and reports of several doctors directly supported this conclusion, including Dr. Krop, who examined and tested Trotter and reviewed numerous records. These same doctors found that Trotter was not deficient in adaptive skills. In addition, Dr. Mosman, a defense expert, did not assess adaptive skills because Trotter's IQ excluded Trotter from the mental retardation category.
Trotter's arguments on appeal rest almost completely on the testimony of Dr. Calvin Pinkard. In 1974, Dr. Pinkard tested and interviewed Trotter (then age *Page 1050 
fifteen) to determine whether he was mentally retarded. Without examining prior school records and IQ testing or adaptive functioning, Pinkard concluded that Trotter was not mentally retarded. Pinkard determined Trotter had an IQ of 88, was normal and mature for his age, was able to follow complex verbal directions, and was capable of being trained in a variety of trades. He diagnosed Trotter with "mild" "inadequate personality disorder" based on Trotter's shyness, negative self-image, and "not making it" in school, but found no treatment was needed.
In 2002, however, Pinkard reversed himself. He opined that Trotter was at age fifteen, and is as an adult, mentally retarded. He testified that Trotter's 1976 IQ score of 88 was artificially inflated by eight points, and having read Dr. Mosman's affidavit, Pinkard testified that Trotter had deficits in adaptive functioning. Pinkard did not examine or conduct any new testing on Trotter.
Because Dr. Pinkard is the only expert who examined Trotter in his youth, Trotter contends his testimony should be essentially determinative and afforded great weight. We disagree. First, the question of evidentiary weight is reserved to the circuit court, and this Court does not reweigh the evidence. Tibbs v. State,397 So.2d 1120, 1123 (Fla. 1981) ("Legal sufficiency alone, as opposed to evidentiary weight, is the appropriate concern of an appellate tribunal."), aff'd, 457 U.S. 31, 102 S.Ct. 2211,72 L.Ed.2d 652 (1982). Second, the circuit court found Dr. Pinkard's testimony unreliable. The determination of the credibility of witnesses also is reserved to the trial court. Windom v. State,886 So.2d 915, 927 (Fla. 2004) ("This Court has held that it will not substitute its judgment for that of the trial court on questions of fact, and likewise on the credibility of witnesses and the weight given to the evidence so long as the trial court's findings are supported by competent, substantial evidence.").
When Trotter was fifteen, Pinkard concluded that Trotter wasnot mentally retarded. As the circuit court found, even if the IQ score of 88 were adjusted down to 80, the IQ would still be above the mental retardation level, a fact Pinkard admitted. Importantly, Pinkard's revised opinion does not rest on his own new examination or testing of Trotter; he did none. In fact, there is no basis in his own testimony to support his new opinion. His opinion is contradicted by the testimony of all of the other experts who did examine Trotter. Accordingly, we affirm the trial court's determination that Trotter is not mentally retarded.
 2. Proportionality Claim
Trotter next contends that the 1993 resentencing order is deficient and that the death sentence is not proportional. These arguments were not preserved below and are procedurally barred because we considered them on direct appeal from Trotter's resentencing. See Trotter, 690 So.2d at 1236 n. 8, 1237 (denying without discussion Trotter's claim that resentencing order was deficient as meritless). Further, this Court considers the question of proportionality in each death penalty case on direct review of the sentence, even when we do not directly address the issue in the written opinion. See Patton v. State,878 So.2d 368, 380 (Fla. 2004) ("[P]roportionality review is inherent in this Court's direct appellate review and the issue is considered regardless of whether it is discussed in the opinion or raised by a party. . . ."); see also Anderson v. State,841 So.2d 390, 407 (Fla. 2003) ("Due to the uniqueness of the penalty, this Court addresses the propriety of all death sentences in a proportionality review."); Fla.R.App.P. 9.142(a)(6) ("In *Page 1051 
death penalty cases, whether or not insufficiency of the evidence or proportionality is an issue presented for review, the court shall review these issues and, if necessary, remand for the appropriate relief.").
 B. Ineffective Assistance of Counsel Claims
Trotter raises three claims on appeal from the denial of his postconviction motion: (1) that Trotter's mental health expert did not provide competent and effective assistance under Ake v.Oklahoma, 470 U.S. 68, 74, 84, 105 S.Ct. 1087, 84 L.Ed.2d 53
(1985) (holding where sanity at the time of crime is at issue and in capital penalty proceedings where expert assistance is needed, due process requires that an indigent defendant have psychiatric expert assistance); (2) that trial counsel was ineffective for failing to investigate Trotter's background and develop available mitigation; and (3) that trial counsel was constitutionally ineffective for failing to file a timely motion to vacate a prior conviction.[7]
In Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052,80 L.Ed.2d 674 (1984), the Court established a two-pronged standard for determining whether counsel provided legally ineffective assistance. First, a defendant must point to specific acts or omissions of counsel that are "so serious that counsel was not functioning as the `counsel' guaranteed the defendant by the Sixth Amendment." Id. at 687, 104 S.Ct. 2052. Second, the defendant must establish prejudice by "show[ing] that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."Id. at 694, 104 S.Ct. 2052. A reasonable probability is a "probability sufficient to undermine confidence in the outcome."Id. Claims of ineffective assistance present mixed questions of law and fact. Occhicone v. State, 768 So.2d 1037, 1045 (Fla. 2000). This Court independently reviews the trial court's legal conclusions and defers to the trial court's findings of fact. As explained below, we affirm the denial of each of Trotter's claims.
 1. Mental Health Expert Assistance
In his postconviction motion, Trotter alleged that counsel was ineffective because Trotter did not have the assistance of a competent and effective mental health expert in Dr. Krop.[8] On appeal, however, Trotter presents a different claim: that Krop did not provide competent and effective assistance as required by Ake. Accordingly, this claim was not preserved for appellate review. As explained below, it is also meritless.
In Ake, the United States Supreme Court held, with regard to the sentencing phase of capital trials, that "due process requires access to a psychiatric examination on relevant issues, to the testimony of the psychiatrist, and to assistance in preparation at the sentencing phase." 470 U.S. at 84,105 S.Ct. 1087. This requirement of access to, and assistance *Page 1052 
from, a mental health expert was met here. At Trotter's resentencing, three experts testified for him: Dr. Harry Krop, Dr. Frank Wood, and Dr. Michael Maher. Dr. Krop administered various tests, met with Trotter several times, reviewed numerous documents and records regarding Trotter's background, and interviewed several witnesses who knew Trotter. Based in large part on his testimony, the trial court found two statutory mitigating factors: that Trotter was under the influence of extreme mental and emotional disturbance and his capacity was substantially impaired. Trotter, 690 So.2d at 1236 n. 6. The resentencing court also found the following nonstatutory mitigators: Trotter's below-average IQ, family and developmental problems, disadvantaged background, possible frontal lobe brain disorder, and remorse, and other nonstatutory factors presented by the defense. Id. at 1236 n. 7. Accordingly, Trotter has failed to demonstrate either an error of counsel or the inadequacy of the defense's mental health expert. See, e.g.,Elledge v. State, 911 So.2d 57, 72 (Fla. 2005) ("[T]he record does not support the contention that Elledge was denied an adequate mental evaluation as required by Ake."), cert.denied, ___ U.S. ___, 126 S.Ct. 1173, 163 L.Ed.2d 1141 (2006);Hodges v. State, 885 So.2d 338, 353 (Fla. 2004) (holding that the defendant failed to establish an Ake violation because he "had access to multiple mental health experts prior to trial, and the experts performed all of the essential tasks required byAke").
Moreover, Trotter's allegations both below and on appeal are based on the testimony of Trotter's more recently hired mental health expert. As we have previously stated, mental health investigation and testimony are not rendered incompetent "merely because the defendant has now secured the testimony of a more favorable mental health expert." Gaskin v. State,822 So.2d 1243, 1250 (Fla. 2002) (quoting Asay v. State, 769 So.2d 974,986 (Fla. 2000)). Accordingly, Trotter is not entitled to relief on this claim.
 2. Investigation into Mitigation
Trotter contends that resentencing counsel was ineffective for failing either to present Trotter's two nieces as penalty phase mitigation witnesses or to provide them to Dr. Krop for interviews. The trial court found their testimony both irrelevant and cumulative. We affirm.
The two nieces were Gladys Casimir and Marshanette Polite. Gladys was four years old when Trotter was placed in foster care, and Trotter lived with Marshanette's family for a time when she was five or six years old, and she had no more contact with him until they were both adults. They testified, for example, that Trotter married a drug-using prostitute, cared for her children, and was "slow." In contrast, Dr. Krop, who testified for Trotter at both sentencing and resentencing, interviewed Trotter six times; reviewed numerous documents, including school records, psychological testing, and prison records; interviewed several people, including Trotter's mother, foster mother, sister, and one of Trotter's friends, a former foster child who lived with Trotter's foster family, and a correctional officer who knew Trotter; and consulted a pharmacologist, a psychiatrist, and a neuropsychologist. As stated previously, the testimony presented at resentencing established two statutory and several nonstatutory mitigating circumstances. Accordingly, Trotter failed to meet either of Strickland's requirements.
 3. Trotter's Prior Conviction
Trotter's final argument on appeal is that trial counsel was ineffective for failing to file a timely motion to vacate a prior conviction. In September 1985, Trotter *Page 1053 
pled no contest to charges of robbery and burglary, and the court sentenced Trotter to two years of community control. Then in June 1986, Trotter committed the murder for which he now stands sentenced to death. At both penalty phases, the first in 1987 and the resentencing in 1993, the 1985 robbery conviction and sentence served as the basis for two aggravators: "prior violent felony" and "on community control at the time of the murder."[9] In November 1992, Trotter's defense counsel filed motions to withdraw Trotter's plea in the 1985 case and to vacate that conviction, which the trial court denied.
Trotter contends that the circuit court erred in denying his 3.850 motion to vacate the 1985 conviction. He also claims that defense counsel was ineffective for not filing a motion to vacate the 1985 conviction at the time of his first murder trial and sentencing. We address each claim in turn.
First, on direct appeal from resentencing, Trotter argued that the trial court erred in denying his motion challenging the validity of his 1985 conviction. See Trotter, 690 So.2d at 1236
n. 8. Without discussion, we affirmed denial of the issue as meritless. Id. at 1237. Accordingly, not only could Trotter have raised a claim on direct appeal, but he did so, and is thus procedurally barred from raising any claim regarding the 1985 plea and conviction.
Trotter also claims that defense counsel was ineffective for failing timely to file a motion attacking the 1985 conviction. Assuming this issue is not moot in light of our prior remand for a new penalty phase, we find the claim lacks merit. The trial court in 1992 denied the motions to withdraw the plea and to vacate the conviction as procedurally barred because they were filed beyond the two-year limit of rule 3.850. The trial court, however, also denied the motions on the merits because the evidence presented was legally insufficient. In denying this ineffective assistance claim, the postconviction court held that because the trial court previously also denied the motions on the merits, Trotter failed to establish prejudice for counsel's untimely filing of the motions. We agree that Trotter has failed to establish prejudice and affirm denial of relief on this claim.
 III. THE HABEAS PETITION
Trotter also petitions us for a writ of habeas corpus, raising two claims, one of which he admits is not yet cognizable for review. We deny both claims as explained below.
Trotter first contends that his death sentence is unconstitutional under Apprendi v. New Jersey, 530 U.S. 466,120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), and Ring v. Arizona,536 U.S. 584, 122 S.Ct. 2428, 153 L.Ed.2d 556 (2002). This Court previously has held that neither Apprendi nor Ring applies retroactively. See Hughes v. State, 901 So.2d 837, 838 (2005) (holding that Apprendi does not apply retroactively); Johnsonv. State, 904 So.2d 400, 412 (Fla. 2005) (holding that Ring
does not apply retroactively). Accordingly, we deny this claim.
In his second habeas issue, Trotter argues that he may be incompetent at the time of execution. He admits, however, that his claim is not ripe for review. Trotter is correct, and we deny this claim as well. See Hall v. Moore, 792 So.2d 447, 450 (Fla. 2001) (stating that consideration of death-sentenced defendant's claim of incompetency *Page 1054 
or insanity to be executed is premature if death warrant has not been signed); see also Fla.R.Crim.P. 3.811(c)(d) (stating that court may not consider motion to stay execution on grounds of incompetence or insanity to be executed until governor has signed death warrant and, following statutory proceedings, has determined the prisoner is sane).
 IV. CONCLUSION
Having considered the briefs and the supplemental briefs filed following remand and having reviewed the petition for writ of habeas corpus and heard oral argument in this cause, we affirm the denial of postconviction relief and the order determining Trotter is not mentally retarded, and we deny Trotter's habeas petition.
It is so ordered.
PARIENTE, C.J., and WELLS, ANSTEAD, LEWIS, CANTERO, and BELL, JJ., concur.
QUINCE, J., recused.
[1] Trotter raised eight issues on appeal: that the trial court erred by (1) refusing to grant an additional peremptory challenge; (2) failing to investigate alleged extraneous influences on the jury; (3) refusing to disqualify the prosecutor who previously represented Trotter on an unrelated matter; (4) failing to remove a juror for cause; (5) using Trotter's community control violation as a sentence aggravator; (6) refusing to admit Trotter's drawings as mitigation; (7) using a constitutionally vague heinous, atrocious, or cruel (HAC) jury instruction; and (8) determining that the murder was HAC.
[2] The court found the following aggravators: Trotter was on community control at the time of the murder; he had a prior violent felony conviction; he committed the murder in the course of a robbery and for pecuniary gain (merged); and the murder was "especially wicked, evil, atrocious, and cruel."690 So.2d at 1236 n. 5. The court found two statutory mitigators — extreme mental and emotional disturbance and capacity substantially impaired (cocaine addiction) — and nonstatutory mitigation, including below-average IQ, family and developmental problems, disadvantaged background, possible frontal lobe brain disorder, Trotter's remorse, and "other nonstatutory factors." Id. at 1236 nn. 6-7.
[3] Trotter raised the following issues: (1) that the trial court erred in using community control as an aggravating circumstance; (2) that victim impact evidence is generally inadmissible and (3) that admission of such evidence in his case was improper; (4) that he should have been permitted to challenge the validity of his 1985 prior robbery conviction; (5) that the trial court failed to investigate his racial bias claim; (6) that the trial court erred in denying his cause challenges and (7) in denying a specific cause challenge; (8) that the trial court erroneously admitted evidence of a nonstatutory aggravator; (9) that the prosecutor made improper comments; and (10) that the sentencing order was deficient. Id. at 1236 n. 8.
[4] In his postconviction motion Trotter alleged that counsel was ineffective for (1) failing to timely challenge the validity of his prior violent felony conviction and failing to present evidence regarding the circumstances of that prior crime; (2) not having the assistance of a competent mental health expert; (3) failing to provide mental health experts with available information necessary to their diagnoses of Trotter; and (4) conceding guilt during the guilt phase closing argument. He further alleged that (5) execution by lethal injection or electrocution is unconstitutional; (6) Florida's death penalty sentencing statute is unconstitutional on its face and as applied; (7) the penalty phase jury instructions unconstitutionally shifted the burden to Trotter; and (8) cumulative errors were not harmless.
[5] Trotter also argues that the clear and convincing evidence standard of section 921.137(4), Florida Statutes (2001) (prohibiting imposition of death sentence on a mentally retarded defendant), is unconstitutional. We need not address this claim, however, because the trial court concluded that Trotter was not mentally retarded either under the clear and convincing evidence standard or the preponderance of the evidence standard. See Singletary v. State, 322 So.2d 551, 552 (Fla. 1975) (stating that "courts should not pass upon the constitutionality of statutes if the case in which the question arises may be effectively disposed of on other grounds").
[6] Rule 3.203 defines mental retardation as follows:
 As used in this rule, the term "mental retardation" means significantly subaverage general intellectual functioning existing concurrently with deficits in adaptive behavior and manifested during the period from conception to age 18. The term "significantly subaverage general intellectual functioning," for the purpose of this rule, means performance that is two or more standard deviations from the mean score on a standardized intelligence test authorized by the Department of Children and Family Services in rule 65B-4.032 of the Florida Administrative Code. The term "adaptive behavior," for the purpose of this rule, means the effectiveness or degree with which an individual meets the standards of personal independence and social responsibility expected of his or her age, cultural group, and community.
(Emphasis added.) Section 921.137(1), Florida Statutes (2005), provides an identical definition, but the statute "does not apply to a defendant who was sentenced to death prior to" its effective date. Id. § 921.137(8).
[7] In his original brief, Trotter raises one issue — that section 921.137, Florida Statutes (2001), is unconstitutional because it does not provide for retrospective application ofAtkins v. Virginia, 536 U.S. 304, 321, 122 S.Ct. 2242,153 L.Ed.2d 335 (2002) (holding that it is unconstitutional to execute a "mentally retarded offender") — that our remand rendered moot. Another issue, that Trotter is mentally retarded, is redundant and thus merged with the first issue raised in the supplemental brief.
[8] Trotter claimed that Dr. Krop's alleged testing errors, inadequate research, and erroneous diagnoses all resulted in misleading and preventing counsel from adequately or effectively defending Trotter at both the guilt and sentencing phases.
[9] The resentencing court found four aggravators. The other two were that the murder was committed in the course of a robbery and that the murder was "especially wicked, evil, atrocious, and cruel." Trotter, 690 So.2d at 1236 n. 5.