# Supreme Court of Florida

_____

No. SC2026-0214

_____

**MELVIN TROTTER,**
Appellant,

vs.

**STATE OF FLORIDA,**
Appellee.

_____

No. SC2026-0217

_____

**MELVIN TROTTER,**
Petitioner,

vs.

**SECRETARY, DEPARTMENT OF CORRECTIONS,**
Respondent.

February 17, 2026

PER CURIAM.

Melvin Trotter is a prisoner under sentence of death for whom a death warrant has been signed and an execution date set for February 24, 2026. He appeals the circuit court's order summarily

denying his successive motion for postconviction relief filed under Florida Rule of Criminal Procedure 3.851, petitions this Court for a writ of habeas corpus, and requests a stay of execution. We have jurisdiction. *See* art. V, § 3(b)(1), (9), Fla. Const. As we explain below, we affirm the summary denial of postconviction relief. We also deny Trotter's habeas petition and his request for a stay of execution.

## I. FACTS AND PROCEDURAL BACKGROUND

Trotter was convicted of the 1986 first-degree murder of 70-year-old Virgie Langford. *Trotter v. State*, 576 So. 2d 691 (Fla. 1990). This Court explained:

> On June 16, 1986, a truck driver went into Langford's grocery in Palmetto, Florida, and found the seventy-year-old owner, Virgie Langford, bleeding on the floor in the back of the store. She had suffered a large abdominal wound which resulted in disembowelment; there were a total of seven stab wounds. She told the driver that she had been stabbed and robbed. Several hours after the surgery for her wounds, the victim went into cardiac arrest and died.

*Id.* at 692. The jury recommended the death penalty, and the trial court sentenced Trotter to death. On direct appeal, this Court affirmed Trotter's first-degree murder conviction but reversed Trotter's death sentence and remanded for a new penalty phase.

- 2 -

At the conclusion of the new penalty phase, the jury again recommended that Trotter be sentenced to death.  Upon finding that multiple aggravating factors were proven beyond a reasonable doubt and that the aggravating factors outweighed the mitigating circumstances, the trial court followed the jury's recommendation and sentenced Trotter to death.  *Trotter v. State*, 690 So. 2d 1234, 1236 (Fla. 1996).  In its sentencing order, the trial court found the following aggravating factors: (1) Trotter was on community control at the time of the murder; (2) Trotter had been convicted of a prior violent felony; (3) the murder took place while Trotter was engaged in a robbery (merged with pecuniary gain); and (4) the murder was especially wicked, evil, atrocious, and cruel.  *Id.* at 1236 n.5.

The trial court found as statutory mitigation that at the time of the murder (1) Trotter was under the influence of extreme mental and emotional disturbance, and (2) Trotter's capacity to conform his conduct to the requirements of law was substantially impaired.  As nonstatutory mitigation, the court found that (1) Trotter had a below average IQ, family and developmental problems, and a disadvantaged background; (2) Trotter may have suffered from a frontal lobe brain disorder (which the sentencing order indicated

- 3 -

"slowed down [Trotter's] reaction times"); (3) Trotter was remorseful "to some degree"; and (4) other nonstatutory factors. *Id.* at 1236 nn.6-7.

Trotter's convictions and sentences became final when the United States Supreme Court denied certiorari review on October 6, 1997. *Trotter v. Florida*, 522 U.S. 876 (1997).

Since that time, Trotter has unsuccessfully challenged his death sentence in state and federal courts. *See Trotter v. State*, 932 So. 2d 1045 (Fla. 2006) (affirming denial of initial motion for postconviction relief, denying state habeas petition, and affirming the rejection of Trotter's claim of mental retardation under Florida Rule of Criminal Procedure 3.203); *Trotter v. State*, 10 So. 3d 633 (Fla. 2009) (unpublished table decision) (affirming denial of first successive motion for postconviction relief); *Trotter v. State*, 235 So. 3d 284 (Fla. 2018) (affirming denial of second successive motion for postconviction relief); *Trotter v. Sec'y, Dep't of Corr.*, No. 8:06-cv-1872-T-17MSS, 2007 WL 3326672 (M.D. Fla. Nov. 6, 2007) (denying federal habeas petition); *Trotter v. Sec'y, Dep't of Corr.*, 535 F.3d 1286 (11th Cir. 2008) (affirming denial of federal habeas relief).

Governor Ron DeSantis signed Trotter's death warrant on January 23, 2026. On February 2, 2026, Trotter filed in the circuit court a motion for stay of execution and a successive motion for postconviction relief under rule 3.851 raising two claims: (1) the alleged failure of the Florida Department of Corrections (FDOC) to follow the published lethal injection procedures violates Trotter's Eighth and Fourteenth Amendment rights under the United States Constitution and the corresponding provisions of the Florida Constitution; and (2) executing Trotter constitutes cruel and unusual punishment because of his advanced age and status as an elderly person.

On February 6, 2026, the circuit court summarily denied both of Trotter's rule 3.851 claims and denied his motion to stay the execution. Trotter now appeals to this Court the circuit court's denial of postconviction relief, petitions this Court for a writ of habeas corpus, and requests a stay of execution.

## II. ANALYSIS

### A. Successive Motion for Postconviction Relief

The "[s]ummary denial of a successive postconviction motion is appropriate '[i]f the motion, files, and records in the case

- 5 -

conclusively show that the movant is entitled to no relief.' " *Owen v. State*, 364 So. 3d 1017, 1022 (Fla. 2023) (second alteration in original) (quoting *Bogle v. State*, 322 So. 3d 44, 46 (Fla. 2021)). We review the circuit court's decision de novo, "accepting the movant's factual allegations as true to the extent they are not refuted by the record, and affirming the ruling if the record conclusively shows that the movant is entitled to no relief." *Id.* at 1022-23 (quoting *Walton v. State*, 3 So. 3d 1000, 1005 (Fla. 2009)). The circuit court did not err in summarily denying Trotter's claims.

Trotter's postconviction appeal raises two issues, the first of which involves his claim that FDOC maladministered certain lethal injection procedures in recent executions. According to Trotter, FDOC's alleged failure to comply with the published procedures creates a sure or very likely risk of sufficiently imminent danger and thus violates his right to be free from cruel and unusual punishment. Second, Trotter, who recently turned 65 years old, argues that executing him at the age of 65 violates the protection against cruel and unusual punishment because of his status as an elderly person. We address each issue in turn and explain why Trotter is not entitled to relief.

### 1. Lethal Injection Procedures

Trotter challenges the summary denial of his claim that FDOC's alleged maladministration of the published procedures for execution by lethal injection violates his rights under the Eighth Amendment and corresponding provisions of the Florida Constitution. In support of this claim, Trotter alleges several examples of FDOC's maladministration of its procedures: ad hoc recordkeeping regarding the removal of lethal injection drugs from inventory; the administration of incorrect drug doses during certain executions; the use of a fourth drug, lidocaine, during certain executions; the use of expired drugs during certain executions; and the failure to contemporaneously document and accurately record the drugs used in executions. Trotter maintains that these instances—based on evidence submitted in a federal lawsuit brought by since-executed inmate Frank Walls—constitute "a per se violation of [his] constitutional rights under the [Eighth] Amendment" due to "sure or very likely risks of sufficiently imminent danger."

While Trotter contends that his lethal injection claim is not a traditional "method-of-execution claim," the gist of his argument

remains that executing him by lethal injection—given the allegations he raises—constitutes cruel and unusual punishment. Thus, to obtain relief, Trotter must: "(1) establish that the method of execution presents a substantial and imminent risk that is sure or very likely to cause serious illness *and* needless suffering and (2) identify a known and available alternative method of execution that entails a significantly less severe risk of pain." *Asay v. State*, 224 So. 3d 695, 701 (Fla. 2017) (emphasis added) (citing *Glossip v. Gross*, 576 U.S. 863, 877 (2015)). The circuit court did not err in denying an evidentiary hearing on nor in summarily denying this claim. *See Heath v. State*, 2026 WL 320522, at *3 (Fla. Feb. 3) (stating that "speculative and conclusory allegations that lethal injection protocols present a substantial risk of serious harm are insufficient to warrant an evidentiary hearing" (citing *Cole v. State*, 392 So. 3d 1054, 1065 n.18 (Fla. 2024))), *cert. denied*, 2026 WL 363902 (U.S. Feb. 10, 2026).

Trotter acknowledges that his allegations are substantively similar to those we recently addressed in the postconviction appeal of recently executed inmate Ronald Heath. In *Heath*, we explained:

The question is not whether protocol deviations occurred but whether the defendant's allegations would demonstrate a substantial and imminent risk that is sure or very likely to cause serious illness and needless suffering. Heath's allegations would not demonstrate such a risk. The alleged failure to document the removal of drugs from inventory until one or two days after an execution would not, without more, show a substantial and imminent risk that is sure or very likely to cause serious illness and needless suffering during an execution. Nor would the alleged failure to log the removal of etomidate from inventory establish such a risk where the autopsy indicates the drug was, in fact, administered. The allegation that lidocaine was administered on two occasions certainly would not establish a risk of needless suffering. Heath's suggestion that inventory removals on dates that "seemingly correspond[]" to executions and reflect amounts less than required by the protocol show that incorrect doses were used is speculative and Heath does not allege that such incorrect doses would create a demonstrated risk of severe pain. The same is true of the alleged use of expired drugs and the execution that took twenty minutes and allegedly involved movement. *None of Heath's allegations would establish that the method of execution presents a substantial and imminent risk that is sure or very likely—in other words, a virtual certainty—to cause serious illness and needless suffering.*

*Id.* (alteration in original) (emphasis added).

However, Trotter argues that his lethal injection claim sufficiently pleads "a substantial and imminent risk that is sure or very likely to cause serious illness and needless suffering during an execution" and that *Heath* is distinguishable on this basis. We

- 9 -

disagree.

In addition to the Walls documents, Trotter also relies on an affidavit submitted by Dr. Daniel Buffington, a clinical pharmacologist. However, similar to *Heath*, the outcomes suggested in the affidavit are speculative and thus do not demonstrate "a substantial and imminent risk that is sure or very likely—in other words, a virtual certainty—to cause serious illness and needless suffering." *Id.*

Moreover, because Trotter incorrectly maintains that the *Glossip* requirements do not apply to his claim, he fails to identify an alternative method of execution.

Trotter is not entitled to relief, and we affirm the circuit court's denial of this claim.

### 2. Execution of the Elderly

Trotter also urges this Court to hold that his advanced age and status as an elderly person exempt him from execution on Eighth Amendment grounds because carrying out his death sentence by execution at 65 years of age runs afoul of evolving standards of decency and would constitute cruel and unusual punishment. The circuit court did not err in denying this claim.

Trotter's Eighth Amendment argument in favor of a categorical ban on the execution of the elderly is similar to that raised in *Smithers v. State*, 420 So. 3d 460 (Fla.), *cert. denied*, 146 S. Ct. 323 (2025). Smithers, who was also under an active death warrant, argued that executing him at age 72 would constitute cruel and unusual punishment. There, we observed that "[p]resently, the United States Supreme Court—and this Court—recognize only one age-based death penalty exemption, which prohibits the imposition of the death penalty on individuals who were under the chronological age of 18 at the time that their capital crimes were committed." *Id.* at 465 (citing *Roper v. Simmons*, 543 U.S. 551, 578 (2005)). Trotter asks this Court to revisit our holding in *Smithers*. We decline to do so.

In rejecting Smithers' claim that executing him at age 72 would constitute cruel and unusual punishment, we observed:

> *Because the Supreme Court has interpreted the Eighth Amendment to limit the exemption from execution . . . based on age to those whose chronological age was less than eighteen years at the time of their capital crime(s), this Court is bound by those interpretations* and is precluded from interpreting Florida's prohibition against cruel and unusual punishment to exempt . . . *those whose chronological age was over eighteen years at the time of their capital crime(s).*

- 11 -

*Id.* (omissions in original) (quoting *Gudinas v. State*, 412 So. 3d 701, 713 (Fla. 2025)). We concluded that "to the extent we view Smithers' argument as precluded by United States Supreme Court precedent, we are bound by the conformity clause [of the Florida Constitution]," *id.* at 466, meaning that

> the Supreme Court's interpretation of the Eighth Amendment is both the floor and the ceiling for protection from cruel and unusual punishment in Florida, and this Court cannot interpret Florida's prohibition against cruel and unusual punishment to provide protection that the Supreme Court has decided is not afforded by the Eighth Amendment.

*Ford v. State*, 402 So. 3d 973, 979 (Fla.) (quoting *Barwick v. State*, 361 So. 3d 785, 794 (Fla. 2023)), *cert. denied*, 145 S. Ct. 1161 (2025).

Trotter argues that because the United States Supreme Court has not expressly addressed whether the elderly are categorically exempt from execution, this Court is not bound by the conformity clause and may expand Eighth Amendment protections to the execution of the elderly. However, as we stated in *Gudinas*:

> While the states are required to adhere to the Supreme Court's Eighth Amendment jurisprudence, *neither the Eighth nor Fourteenth Amendments require states to expand the protections afforded by the Eighth Amendment*

- 12 -

*or to interpret their own corresponding state constitutional prohibitions against cruel and unusual punishment in a more expansive manner than the Supreme Court has interpreted the federal prohibition.*

412 So. 3d at 714 (emphasis added). Consistent with our analyses in *Smithers* and *Gudinas*, we again decline to expand the prohibition against cruel and unusual punishment to include individuals 65 years of age and older. As such, we affirm the circuit court's summary denial of relief on this issue.

### B. Habeas Petition

In his habeas petition, Trotter requests a stay of execution and an independent investigation of FDOC's compliance with Florida's published lethal injection procedures. According to Trotter, new evidence suggests that FDOC is not following its published procedures and is thereby creating a substantial likelihood of serious injury and needless suffering. Trotter is not entitled to the relief he seeks.

Even if we were to assume that Trotter's habeas claim is properly before this Court, this claim is based on the same allegations raised in his post-warrant successive motion for postconviction relief—a motion that the circuit court denied, and

- 13 -

the denial of which we affirm in this opinion.  In fact, Trotter concedes that he presents "similar" issues in his postconviction appeal and in his habeas petition.  He contends, however, that his habeas petition is sufficiently distinguishable from his successive postconviction appeal because the types of relief he seeks are different.  Trotter notes that instead of seeking to have his death sentence vacated as in his successive postconviction appeal, here, he seeks a stay of execution and an investigation into FDOC's compliance with its lethal injection procedures.  Trotter's attempt to circumvent a procedural bar is unavailing.  Indeed, Trotter has "repackaged one of his postconviction claims as a habeas claim," and for this reason, his habeas claim is procedurally barred.  *Davis v. State*, 383 So. 3d 717, 742 (Fla. 2024).  "[C]laims [that] were raised in [a] postconviction motion . . . cannot be relitigated in a habeas petition."  *Knight v. State*, 923 So. 2d 387, 395 (Fla. 2005).

Trotter's habeas claim also fails on the merits for the same reason that his postconviction claim fails: he has not "(1) establish[ed] that the method of execution presents a substantial and imminent risk that is sure or very likely to cause serious illness *and* needless suffering," nor has he "(2) identif[ied] a

- 14 -

known and available alternative method of execution that entails a significantly less severe risk of pain." *Asay*, 224 So. 3d at 701 (emphasis added) (citing *Glossip*, 576 U.S. at 877).

### III. CONCLUSION

For these reasons, we affirm the denial of Trotter's successive motion for postconviction relief and deny his habeas petition. As such, we decline to order a stay of execution.

No oral argument is required, no motion for rehearing will be considered, and the mandate shall issue immediately.

It is so ordered.

MUÑIZ, C.J., and COURIEL, GROSSHANS, FRANCIS, SASSO, and TANENBAUM, JJ., concur.
LABARGA, J., concurs in result.

An Appeal from the Circuit Court in and for Manatee County,
    Frederick P. Mercurio, Judge
      Case No. 411986CF001225CFAXMA
And an Original Proceeding – Habeas Corpus

Eric Pinkard, Capital Collateral Regional Counsel, Mahham Syed, Assistant Capital Collateral Regional Counsel, Melody Jacquay-Acosta, Assistant Capital Collateral Regional Counsel, and Ann Marie Mirialakis, Assistant Capital Collateral Regional Counsel, Middle Region, Temple Terrace, Florida,

    for Appellant/Petitioner

James Uthmeier, Attorney General, Tallahassee, Florida, Stephen D. Ake, Attorney Manager, Capital Appeals, and Michael W.

Mervine, Special Counsel, Assistant Attorney General, Tampa, Florida,

for Appellee/Respondent