COPE, J.
 

 This is an appeal of an order summarily denying the motion of defendant-appellant Luis Rodriguez to vacate his plea. We affirm.
 

 Defendant-appellant Luis Rodriguez was charged, along with a codefendant, with three counts of first-degree murder for the December 1984 murders of Bea Joseph, Sam Joseph, and Genevieve Abraham. The defendant was also charged with one count of burglary. The State sought the death penalty. The facts of the case are set forth in the codefendant’s appeal,
 
 Rodriguez v. State,
 
 753 So.2d 29 (Fla.2000).
 

 The defendant entered into a written plea agreement with the State whereby he agreed to testify at the codefendant’s trial and perform certain other acts of cooperation with the State. The defendant complied with his obligations and testified as required.
 

 In return, the homicide charges against this defendant were reduced to second-degree murder with a firearm. It was agreed that he would receive a life sentence on the second-degree murder counts and the burglary count. The sentences were imposed as agreed.
 

 The plea agreement required the State to advise the proper authorities that the defendant fully cooperated. The agreement provided:
 

 The Office of the State Attorney specifically does agree to directly communicate with the proper authorities, in writing, to notify them of the terms of this agreement; and that the defendant has fully co-operated, pursuant to these terms, when he has testified against Manuel ‘Tony’ Rodriguez, the co-defendant. The length of actual sentence served, however, shall be in the exclusive control of the Department of Corrections. There is also no promise, express or implied, that the defendant will serve any specified portion of any of these prison sentences.
 

 The written plea agreement allowed the defendant to file a motion to vacate the plea agreement in the event of a breach by the State. The written plea agreement stated in part:
 

 The failure of the Office of the State Attorney to comply with any portion of this agreement, if the defendant fully complies with the duties required of him,
 
 *968
 
 shall cause the terms of this document to be fully enforceable against the State by means of the equitable right of specific performance, by the order of the Court. As an alternative sanction, should the State of Florida breach a material obligation under this agreement, the defendant may move the Court to vacate this plea agreement.
 

 On November 14, 2007, the defendant filed a motion to vacate, alleging that the State had breached the agreement. The trial court summarily denied the motion and the defendant has appealed.
 

 There is an extensive postconviction history in this defendant’s case, most of which need not be summarized here. Ity the time the defendant testified at the codefen-dant’s trial, he had become aware that his sentences were guidelines life sentences and that parole does not exist for a guidelines life sentence. The defendant had also been informed, however, that under a statute in existence on the date of the defendant’s crime, the defendant may be eligible for consideration for commutation of his sentence to a term of years.
 
 See
 
 § 944.30, Fla. Stat. (1983);
 
 Wade v. Singletary,
 
 696 So.2d 754 (Fla.1997);
 
 Dugger v. Williams,
 
 593 So.2d 180 (Fla.1991). Therefore the State’s obligation to give an accurate report of the defendant’s cooperation has practical consequences.
 

 In March 2007, the defendant’s counsel wrote to the defendant saying that he had spoken with Mr. Laeser of the State Attorney’s Office about the State Attorney’s obligations under the plea agreement. According to the letter, Mr. Laeser said that “he would testify before the Parole Board and inform them that you did cooperate at Trial and spoke the truth. He also said that you complied with your Plea Agreement.” In April 2007, counsel again wrote to the defendant. According to the letter, Mr. Laeser “once again told me that it was never intended that you would be eligible for parole and that he opposes any parole for you at this stage.” At that time there was no indication that the State intended to write to the appropriate agencies as required by the plea agreement.
 

 Soon, however, the State did an about face. On May 7, 2007, Mr. Laeser wrote a letter to the Florida Parole Commission on behalf of the State Attorney’s Office which outlined the details of the crime, the fact that the defendant admitted his acts, and the fact that the codefendant was the defendant’s cousin against whom there was little evidence of guilt. The letter went on to say that:
 

 [The defendant] was called as a witness at the trial of Manuel Rodriguez. He testified accurately and without hesitation, as the agreement required. His testimony was instrumental in the conviction for First Degree Murder and Death Sentence obtained against Manuel Rodriguez. He complied with all of his obligations under the agreement. He did so in a manner that showed his personal remorse, and his willingness to assist the law enforcement authorities.
 

 While I do not know what value this might have in his desire to be released from custody one day in the future, I believe that it is important for you to understand the complete and detailed information which Luis Rodriguez gave in assisting in the prosecution of Manuel Rodriguez.
 

 Even if you were aware of this from the original plea agreement or any previous contact from me, I want to reiterate this information for your benefit.
 

 In December 2007, the defendant filed his motion to vacate the plea agreement. He maintained that Mr. Laeser’s earlier discussions with defense counsel amounted to a breach of the plea agreement and that
 
 *969
 
 he was entitled to an order vacating that agreement.
 

 While we affirm the denial of relief, our reasoning differs somewhat from that of the trial court. The trial coui’t stated, in part, that the 2007 motion was “merely a restatement of previously made claims, and would qualify as a subsequent collateral attack, alleging claims that had previously been decided adversely to the defendant.” We respectfully disagree. Counsel’s discussions with Mr. Laeser occurred in March and April of 2007. These 2007 events were not part of any previously filed postconviction motion. Further, the plea agreement required the State to make a written communication with the appropriate agencies. So far as the limited record now before us shows, there was no previous written communication as required by the plea agreement.
 

 We agree with the trial court, however, that there was no material breach of the plea agreement. The defendant contends that in the March communication, Mr. Laeser was refusing to send a written communication on his behalf to a relevant agency, the Parole Commission. He contends that in April 2007, a statement by Mr. Laeser that he opposed parole for the defendant would also be inconsistent with the State’s obligations under the plea agreement (although, as previously stated, the defendant’s sentences are not parole eligible).
 

 We agree with the trial court, however, that whatever Mr. Laeser said privately to defense counsel, he soon reconsidered and sent a written communication to the Parole Commission which accurately reflected the defendant’s cooperation. This communication complied with the plea agreement.
 

 The defendant claims that under the case law, if the State breaches a plea agreement, such a breach cannot subsequently be cured. To begin with, the plea agreement itself provides that the defendant may move to vacate if the State breaches “a material obligation under this agreement[.]” (Emphasis added). In this case there was no material breach, because Mr. Laeser’s conversations with defense counsel never became part of any communication by the State to the Parole Commission.
 

 The cases the defendant cites are not on point. The defendant relies on
 
 Macker v. State,
 
 500 So.2d 256 (Fla. 3d DCA 1986). In that case an assistant state attorney breached a plea agreement by telling an investigator for the Parole Commission that Macker deserved to spend the rest of his life in prison.
 
 Id.
 
 at 257. He also apparently did not tell the investigator about Macker’s cooperation or the plea agreement.
 
 See id.
 
 These actions were contrary to the plea agreement. This court concluded that the defendant had been prejudiced and vacated the plea. Similarly in
 
 Echevarria v. State,
 
 845 So.2d 340 (Fla. 3d DCA 2003), the State communicated to the Parole Commission that it opposed the defendant’s parole application, contrary to the plea agreement. The defendant was allowed to vacate his plea.
 

 In this case, by contrast, the State’s letter to the Parole Commission is in the record and clearly spells out the defendant’s role as a cooperating witness in this case. The present case is unlike the ones relied on by the defendant.
 

 The defendant also raises a procedural issue. The trial court’s order said the court had considered “the motion, the attachments to the said pleading and the State’s oral responses and written submissions thereto.... ” (Emphasis added). The defendant points out that he was not present at the hearing either in person or by telephone, nor was he represented by counsel at the hearing. He maintains that
 
 *970
 
 the procedure was unfair because he has no way of knowing what the oral representations consisted of and no way to respond to them.
 

 In other circumstances, the defendant may well be entitled to relief. The State’s response to a motion of this type should be in writing, precisely so that the defendant has a fair opportunity to reply. Under the unique circumstances of this case, however, the question is whether the May 7, 2007 letter to the Parole Commission was consistent with the State’s obligations under the plea agreement. The defendant does not quarrel with the content of that letter, but only makes the claim that Mr. Laeser’s statements to counsel (memorialized in the March and April 2007 letters which are also in the record) created a material breach of the agreement. It is plain that they do not. Under the circumstances of this case, we conclude that no useful purpose would be served by remanding the case for a further hearing.
 

 For the reasons stated, the order now before us is affirmed.
 
 *
 

 *
 

 We have taken judicial notice of this court’s file in
 
 Rodriguez
 
 v.
 
 State,
 
 963 So.2d 746 (Fla. 3d DCA 2007).