[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 07-15755
_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JULY 23, 2008
THOMAS K. KAHN
CLERK

D. C. Docket No. 06-01872-CV-EAK-MSS

MELVIN TROTTER,

Petitioner-Appellant,

versus

SECRETARY, DEPARTMENT OF CORRECTIONS,
ATTORNEY GENERAL, STATE OF FLORIDA,

Respondents-Appellees.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

(July 23, 2008)

Before BIRCH, BLACK and PRYOR, Circuit Judges.

PRYOR, Circuit Judge:

Melvin Trotter appeals the denial of his petition for a writ of habeas corpus and argues that two statutes enacted after he committed a capital offense but before he was resentenced to death violate the Ex Post Facto Clause of Article I, Section 10, of the United States Constitution. During the sentencing phase of Trotter's original trial, the court and jury found as one of several aggravating circumstances that Trotter was serving a "sentence of imprisonment" because he was serving a sentence of community control when he committed the murder. On appeal, the Supreme Court of Florida held that community control is not "imprisonment" and remanded for resentencing. Before Trotter was resentenced, the Florida Legislature amended the statute of aggravating factors to include serving a sentence of community control. Florida also enacted a statute that permitted the introduction of victim-impact evidence at sentencing. The jury at Trotter's resentencing heard evidence under both of these new statutes, and the court again imposed a sentence of death. On appeal of his second sentence, the Supreme Court of Florida overruled its earlier decision that community control is not "imprisonment," concluded that Trotter's original trial had been error-free, and rejected Trotter's argument about the Ex Post Facto Clause. The court also rejected Trotter's challenge of the victim-impact evidence. Because that decision did not unreasonably apply clearly established federal law, we affirm.

2

## I. BACKGROUND

On June 16, 1986, Melvin Trotter entered a grocery store in Palmetto, Florida, owned by seventy-year-old Virgie Langford, grabbed Ms. Langford by the neck, and stabbed her seven times with a sixteen-inch-long butcher knife that Trotter had obtained at her store. Although Trotter had cut her eight-inches deep and disemboweled her, Ms. Langford remained alive while Trotter robbed her of money and food stamps. Ms. Langford died later at a hospital after a customer discovered her while she lay bleeding on the floor of her store. Trotter used the money that he stole from Ms. Langford to purchase crack cocaine.

After a trial, a jury found Trotter guilty of robbery with a deadly weapon and first-degree murder and recommended a sentence of death by a nine-to-three vote. A Florida statute contained an exhaustive list of aggravating circumstances, Fla. Stat. § 921.141(5) (1985), and the trial court found four of them applied to Trotter: (1) "[t]he crime was committed while under sentence of imprisonment"; (2) "the defendant had previously been convicted of a felony involving use or threat of violence"; (3) "the crime was committed while engaged in the commission of a robbery"; and (4) "the crime was especially wicked, evil, atrocious, and cruel." Trotter v. State, 576 So. 2d 691, 692 & n.2 (Fla. 1990) ("Trotter I"). The trial court also found four mitigating circumstances: (1) the "[d]efendant was under the

3

influence of extreme mental and emotional disturbance"; (2) "the capacity of the defendant was substantially impaired"; (3) "the defendant has a below average I.Q. and a history of family and developmental problems"; and (4) "remorse." Id. at 692 & n.3. The trial court found that the aggravating circumstances outweighed the mitigating circumstances and sentenced Trotter to death. Id. at 692.

The trial court found that Trotter was a "person under sentence of imprisonment," Fla. Stat. § 921.141(5)(a) (1985), because, when the murder occurred, Trotter was serving a sentence of "community control" for a prior conviction of robbery and burglary. See Trotter v. State, 932 So. 2d 1045, 1053 (Fla. 2006) ("Trotter III"). Community control is "a form of intensive, supervised custody in the community, . . . in which the freedom of an offender is restricted within the community, home, or noninstitutional residential placement and specific sanctions are imposed and enforced." Fla. Stat. § 948.001. The Supreme Court of Florida has characterized community control as "a harsh and more severe alternative to ordinary probation." State v. Mestas, 507 So. 2d 587, 588 (Fla. 1987) (Barkett, J.). Trotter successfully argued on appeal that the trial court erred by interpreting "imprisonment" to include a sentence of community control. Trotter I, 576 So. 2d at 694. The Supreme Court of Florida "held that community control was not an aggravating circumstance authorized by statute." Trotter v.

4

State, 690 So. 2d 1234, 1236 (Fla. 1996) ("Trotter II"). The court "remanded for resentencing before a jury." Id.

The decision of the Supreme Court of Florida was controversial. Justice McDonald, joined by Justice Grimes, dissented in part because they "believe[d] it entirely appropriate for the trial judge to find as an aggravating factor that Trotter was under sentence of imprisonment when he committed this crime." Trotter I, 576 So. 2d at 695 (McDonald, J., concurring in part and dissenting in part) (footnote omitted). The dissent explained that "[c]ommunity control is a harsher sentence than probation" and that, under Florida law, community control is a form of "supervised custody." Id. at 695. The dissent also explained that Trotter's counsel had admitted before the trial court that the state had proved that Trotter was incarcerated when the murder occurred and did not object to the jury instruction on service of a sentence of imprisonment. Id. at 695 & n.11.

After the Supreme Court of Florida remanded Trotter's case but before Trotter was resentenced, the legislature enacted two statutes. The first statute amended the list of aggravating circumstances. The amendment provided that it is an aggravating circumstance that "[t]he capital felony was committed by a person under sentence of imprisonment or placed on community control." Fla. Stat. § 921.141(5)(a) (1991) (emphasis added); see Trotter II, 690 So. 2d at 1237. The

second statute provided that, after introducing evidence of an aggravating circumstance, "the prosecution may introduce, and subsequently argue, victim impact evidence." Fla. Stat. § 921.141(7).

At Trotter's resentencing, an advisory jury recommended a sentence of death by a vote of eleven to one. The state introduced testimony from members of the victim's family about the victim's survivors, the victim's personal qualities, and the level of respect that the victim enjoyed in the community. During closing argument, the prosecutor described the victim as a warm and loving person. "[T]he trial court followed the jury's eleven-to-one vote and again imposed the death penalty after finding four aggravating circumstances, two statutory mitigating circumstances, and several nonstatutory mitigating circumstances." Trotter II, 690 So. 2d at 1236 (footnotes omitted). As one aggravating circumstance, the trial court found that "Trotter was on community control at the time of the murders." Id. at 1236 n.5.

The Supreme Court of Florida rejected Trotter's two arguments that his second sentence of death violated the Ex Post Facto Clause. Id. at 1237. Trotter argued that Florida violated the Ex Post Facto Clause "because his crime and initial sentencing took place before the [amendment including community control as an aggravating circumstance] was enacted." Id. The Supreme Court of Florida stated,

6

"We disagree and find no violation, just as we have found no violation in every other case where an aggravating circumstance was applied retroactively—even on resentencing." Id. "Use of community control as an aggravating circumstance" according to the court, "constitutes a refinement in the 'sentence of imprisonment' factor, not a substantive change in Florida's death penalty law." Id. Trotter also argued that the use of his service on community control as an aggravating circumstance violated "the 'law of the case' doctrine because [the Supreme Court of Florida had] already decided [that] issue in his favor," but the Supreme Court of Florida disagreed. Id. The court explained that "[a]n intervening act of the legislature refining a portion of Florida's death penalty statute may be sufficiently exceptional to warrant modification of the law of the case." Id. The court then declared, "We recede from our ruling in [Trotter I] on the use of community control as an aggravating circumstance and note that this renders Trotter's original trial error-free." Id. The perspective of the dissenters in Trotter's original appeal finally prevailed. The Supreme Court of Florida also summarily rejected Trotter's argument about the use of victim-impact evidence as "without merit." Id. The court affirmed Trotter's death sentence. Id. The Supreme Court of the United States later denied Trotter's petition for a writ of certiorari. Trotter v. Florida, 522 U.S. 876, 118 S. Ct. 197 (1997).

7

Trotter moved for postconviction relief under Florida Rule of Criminal Procedure 3.850. Trotter III, 932 So. 2d 1047. He raised several challenges to the effectiveness of his counsel, the method of execution, and the jury instructions given at the sentencing hearing. Id. at 1048 n.4. The trial court denied Trotter's motion, and the Supreme Court of Florida affirmed.

Trotter filed a petition for a writ of habeas corpus in the federal district court. He argued that both the use of his service on community control as an aggravating circumstance and the admission of victim-impact evidence violated the Ex Post Facto Clause. The district court concluded that Florida violated the Ex Post Facto Clause but the violations were harmless because the sentencing court expressly disclaimed reliance on Trotter's community-control status and victim-impact evidence when it imposed the sentence. We granted a certificate of appealability about these issues.

## II. STANDARDS OF REVIEW

We review de novo the denial of a petition for a writ of habeas corpus by the district court. Sims v. Singletary, 155 F.3d 1297, 1304 (11th Cir. 1998) (citing Byrd v. Hasty, 142 F.3d 1395, 1396 (11th Cir. 1998)). The Antiterrorism and Effective Death Penalty Act of 1996 governs Trotter's petition and "limits our review of the decisions of the state courts and establishes a 'general framework of

8

substantial deference' for reviewing 'every issue that the state courts have decided.'" Crowe v. Hall, 490 F.3d 840, 844 (11th Cir. 2007) (quoting Diaz v. Sec'y for the Dep't of Corr., 402 F.3d 1136, 1141 (11th Cir. 2005)). We will affirm the decision of the Supreme Court of Florida unless that decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court," 28 U.S.C. § 2254(d)(1), or there was an "unreasonable determination of the facts," id. § 2254(d)(2).

"The 'contrary to' and 'unreasonable application' clauses of § 2254(d)(1) are separate bases for reviewing a state court's decisions." Putman v. Head, 268 F.3d 1223, 1241 (11th Cir. 2001) (citing Williams v. Taylor, 529 U.S. 362, 404–05, 120 S. Ct. 1495, 1519 (2000)). "A state court decision is 'contrary to' clearly established federal law if either (1) the state court applied a rule that contradicts the governing law set forth by Supreme Court case law, or (2) when faced with materially indistinguishable facts, the state court arrived at a result different from that reached in a Supreme Court case." Id. (citing Bottoson v. Moore, 234 F.3d 526, 531 (11th Cir. 2000)). The decision of the Florida court is an "unreasonable application" of federal law if the state court applied the correct legal rule from the Supreme Court in an "objectively unreasonable" manner. Woodford v. Visciotti, 537 U.S. 19, 25, 123 S. Ct. 357, 360 (2002).

9

## III. DISCUSSION

Article I, Section 10, of the United States Constitution states, "No State shall . . . pass any . . . ex post facto law . . . ." In one of the earliest of notable decisions of the Supreme Court, Calder v. Bull, Justice Chase recognized that this "prohibition . . . necessarily requires some explanation; for, naked and without explanation, it is unintelligible," and "state[d] what laws [he] consider[ed] ex post facto laws, within the words and the intent of the prohibition":

> 1st. Every law that makes an action, done before the passing of the law, and which was innocent when done, criminal; and punishes such action. 2nd. Every law that aggravates a crime, or makes it greater than it was, when committed. 3rd. Every law that changes the punishment, and inflicts a greater punishment, than the law annexed to the crime, when committed. 4th. Every law that alters the legal rules of evidence, and receives less, or different, testimony, than the law required at the time of the commission of the offence, in order to convict the offender.

3 U.S. (3 Dall.) 386, 390 (1798) (Chase, J.). "Early opinions of the [United States Supreme] Court portrayed this as an exclusive definition of ex post facto laws," Collins v. Youngblood, 497 U.S. 37, 42, 110 S. Ct. 2715, 2719 (1990), and decisions of the Supreme Court in recent years have confirmed that Justice Chase's definition in Calder remains exhaustive, Carmell v. Texas, 529 U.S. 513, 539, 120 S. Ct. 1620, 1636 (2000); Collins, 497 U.S. at 45–46, 110 S. Ct. at 2721.

Trotter argues that he is entitled to a writ of habeas corpus because his death

sentence was the consequence of two ex post facto laws. He argues that the statute that added language to the list of aggravating factors about community control aggravated his crime and inflicted a greater punishment than the law provided when he committed his crime. Trotter also argues that the statute that permitted the introduction of victim-impact evidence constituted the kind of alteration in the rules of evidence that violates the Ex Post Facto Clause. Both of these arguments fail. We address each argument in turn.

*A. The Amendment to the Statute of Aggravating Factors*
*Did Not Affect Trotter's Punishment.*

Trotter argues that the amendment by the legislature that added community-control status to the exhaustive statute of aggravating factors that a sentencing court and jury must weigh before imposing a sentence of death makes "more burdensome the punishment for a crime," Beazell v. Ohio, 269 U.S. 167, 169, 46 S. Ct. 68, 68 (1925); Collins, 497 U.S. at 52, 110 S. Ct. at 2724, but we disagree. Although the district court held that Trotter was subject to an ex post facto law and the error was harmless, we "may affirm on any ground supported by the record." Welding Servs., Inc. v. Forman, 509 F.3d 1351, 1356 (11th Cir. 2007). We conclude that Trotter was not subject to an ex post facto law.

The amendment by the legislature that expressly included a sentence of community control as an aggravating factor did not affect Trotter's punishment

11

because, after that statute was passed, the Supreme Court of Florida "recede[d] from [its] ruling" in Trotter's original appeal that a "sentence of imprisonment" under the statute of aggravating factors does not include a sentence of community control. Trotter II, 690 So. 2d at 1236–37. Based on that decision, the statute of aggravating factors included service on community control when Trotter committed his crime. The court explained that its decision to overrule its earlier decision rendered "Trotter's original trial error-free." Id. at 1237.

The Supreme Court of the United States has explained that "[e]very ex post facto law must necessarily be retrospective." Calder, 3 U.S. (3 Dall.) at 391 (Chase J.); accord Miller v. Florida, 482 U.S. 423, 430, 107 S. Ct. 2446, 2451 (1987); Weaver v. Graham, 450 U.S. 24, 30, 101 S. Ct. 960, 964 (1981). An ex post facto law "changes the legal consequences of acts completed before its effective date." Weaver, 450 U.S. at 31, 101 S. Ct. at 965. Because a sentence of community control was a "sentence of imprisonment" under the statute of aggravating factors at the time of Trotter's crime, Trotter II, 690 So. 2d at 1237, the amendment that added to that statute an express reference to community control did not change the meaning of the statute or the consequences of Trotter's acts.

"The Ex Post Facto Clause is a limitation upon the powers of the Legislature, and does not of its own force apply to the Judicial Branch of

12

government." Marks v. United States, 430 U.S. 188, 191, 97 S. Ct. 990, 992 (1977) (citations omitted) (citing Calder, 3 U.S. (3 Dall.) at 388 (Chase, J.); Frank v. Magnum, 237 U.S. 309, 344, 35 S. Ct. 582, 593 (1915)). At oral argument, Trotter questioned the wisdom of the change of position by the Supreme Court of Florida, but it is not our place to second-guess the interpretation of the law of Florida by its highest court. The question before us is whether the use of Trotter's service on community control as an aggravating circumstance violated the Ex Post Facto Clause of Article I, Section 10, of the Constitution. In the light of the second decision by the Supreme Court of Florida, which rendered Trotter's "original trial error-free," Trotter II, 690 So. 2d at 1237, the amended statute about community control did not change the legal consequences of Trotter's crime. The decision of the Supreme Court of Florida about the use of community control as an aggravating circumstance was not an unreasonable application of clearly established federal law.

### B. *Trotter Is Not Entitled to a Writ of Habeas Corpus Based on the Use of Victim-Impact Evidence.*

Trotter argues that the admission of victim-impact evidence under a statute that was passed after he committed his crime entitles him to a writ of habeas corpus, but we disagree. The opinion of Justice Chase in Calder describes a category of ex post facto laws that involves alterations to the "legal rules of

13

evidence," 3 U.S. (3 Dall.) at 390 (Chase, J.), but three years before the Supreme Court of Florida affirmed Trotter's conviction and sentence the Supreme Court of the United States explained that the Ex Post Facto Clause "was not intended to prohibit the application of new evidentiary rules in trials for crimes committed before the changes," Collins, 497 U.S. at 42 n.3, 110 S. Ct. at 2719 n.3. That statement in Collins reaffirmed longstanding precedent that controls our resolution of this issue. In Thompson v. Missouri, the Supreme Court held that the retroactive application of a law permitting the introduction of expert testimony on handwriting that had previously been inadmissible was not a violation of the Ex Post Facto Clause. 171 U.S. 380, 388, 18 S. Ct. 922, 925 (1898). In the light of that decision, the decision by the Supreme Court of Florida rejecting Trotter's challenge to the retroactive application of a law permitting the introduction of victim-impact testimony was not contrary to or an unreasonable application of clearly established federal law as determined by the Supreme Court of the United States. 28 U.S.C. § 2254(d)(1).

Trotter argues that a decision issued by the Supreme Court of the United States four years after the Supreme Court of Florida affirmed his conviction and sentence entitles him to the writ that he requests. In Carmell v. Texas, the Supreme Court of the United States held that rules of evidence can be ex post facto laws if

14

they "reduce the quantum of evidence" necessary for the government to meet its burden of proof. 529 U.S. 513, 541, 120 S. Ct. 1620, 1637 (2000). The Supreme Court addressed an alteration to a statute that required that the testimony of victims age 14 and older be corroborated by other evidence or a statement made by the victim to another person within six months of the crime. Id. at 516, 120 S. Ct. at 1624. The alteration, which was passed after the defendant committed various sexual offenses against his stepdaughter, raised the age of the victims for whom corroboration was required from 14 to 18. Id. at 518, 120 S. Ct. at 1625. The Supreme Court held that this law was "unquestionably" the fourth kind of law described in Calder. Id. at 530, 120 S. Ct. at 1631.

> Under the law in effect at the time the acts were committed, the prosecution's case was legally insufficient and petitioner was entitled to a judgment of acquittal, unless the State could produce both the victim's testimony and corroborative evidence. The amended law, however, changed the quantum of evidence necessary to sustain a conviction; under the new law, petitioner could be (and was) convicted on the victim's testimony alone, without any corroborating evidence.

Id. (emphasis omitted).

Trotter's argument fails. The statute that allowed the use of victim-impact evidence did not reduce the quantum of evidence necessary for the government to meet its burden of proof and is not the kind of evidentiary rule addressed by Carmell and Calder. The decision of the Supreme Court of Florida was not

15

contrary to or an unreasonable application of "clearly established Federal law, as determined by the Supreme Court," 28 U.S.C. § 2254(d)(1).

## IV. CONCLUSION

The denial of Trotter's petition is

**AFFIRMED**.