[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 16-14842
Non-Argument Calendar
_____

D.C. Docket No. 8:15-cv-01186-VMC-AEP

HECTOR RIVERA,

Petitioner-Appellant,

versus

SECRETARY, DEPARTMENT OF CORRECTIONS,
ATTORNEY GENERAL, STATE OF FLORIDA,

Respondents-Appellees.

_____

Appeal from the United States District Court
for the Middle District of Florida
_____

(June 12, 2018)

Before TJOFLAT, NEWSOM and HULL, Circuit Judges.

PER CURIAM:

Hector Rivera, a Florida prisoner, appeals pro se the district court's denial of his 28 U.S.C. § 2254 petition for a writ of habeas corpus. Rivera is serving a life sentence without parole for a first-degree murder conviction, a concurrent life sentence without parole for the attempted first-degree murder of another victim, and a 15-year sentence for the attempted first-degree murder of yet another victim. In this appeal, the only issue is whether the district court erred in determining that Rivera's claim challenging, under Florida law, the concurrent life sentence for his attempted first-degree murder conviction was procedurally defaulted and otherwise without merit.

After careful review, we agree with the district court's ruling that Rivera has not properly exhausted this claim in state court, and it is thus procedurally defaulted. We also conclude that, in any event, his claim based on Florida law does not state a basis for federal habeas corpus relief. Accordingly, we affirm the district court's denial of Rivera's § 2254 petition.

## I.    BACKGROUND

This case arises from petitioner Rivera's involvement in a home invasion on the evening of August 9, 2003. That home invasion resulted in the shooting death of Carlos Martin-Gonzales ("Carlos") and the attempted murder of Carlos's wife and daughter. The trial evidence demonstrated the following facts.

2

## A.    Offense Conduct

Carlos was born in Puerto Rico but later moved to Tampa, Florida and worked as a medical technician.  Carlos opened a clinic in Tampa, where he began working with a man named Pedro Rivera ("Pedro"), who is the brother of petitioner Hector Rivera.  Carlos became indebted for several thousand dollars to Pedro over the clinic.

For additional income, Carlos also performed diagnostic work in Puerto Rico for a different man named Nestor Pagan Gonzalez ("Nestor").  Carlos allegedly stole some checks from Nestor for money that Carlos believed he was owed by Nestor.

As a result, Nestor and Pedro sent a hitman from Puerto Rico, Jose Rodriguez-Sosa, who was Nestor's cousin, to "resolve this situation" with Carlos. When Rodriguez-Sosa arrived in Tampa, Pedro and petitioner Hector Rivera picked him up at the airport and provided Rodriguez-Sosa with a gun.

Because Carlos and petitioner Rivera grew up together in Puerto Rico and were friends, Carlos trusted petitioner Rivera.  The plan was to have petitioner Rivera approach Carlos's apartment and make him open the door under the

3

auspices of Rivera's repossessing Carlos's car.[1]  Then, Rodriguez-Sosa would enter too and attempt to collect on Carlos's debts to Nestor and Pedro.

Carlos lived with his wife, Glenda Badias, and their two daughters in an apartment in Seminole, Florida.  On the night of August 9, 2003, Carlos and Glenda heard someone banging on their apartment door, and Carlos opened the door when he saw petitioner Rivera outside.  As Rivera entered the apartment, Rodriguez-Sosa entered forcibly behind him and then struck Carlos in the head with a gun.  Rodriguez-Sosa grabbed Carlos by the neck, forced him onto the sofa, and began asking him about the money Carlos owed to Nestor and Pedro. Rodriguez-Sosa also threatened to shoot Glenda if she was not quiet.

Petitioner Rivera told Glenda, who was holding her infant daughter at the time, that he did not know what was going on and that he was just there "to repossess the van," but warned Glenda that Rodriguez-Sosa would shoot her and the baby if provoked.  According to Glenda, Rivera "was just standing there" during the entire event.

After Carlos denied that he had Nestor's and Pedro's money, Rodriguez-Sosa shot him in the neck and head, killing him instantaneously. Rodriguez-Sosa then shot Glenda twice, and one of the bullets lodged in her

---

[1] Petitioner Rivera did repossession work for a car dealership in town.  That dealership had once repossessed Carlos's vehicle, and after the repossession, Rivera had returned the personal items in the car to Carlos.

4

daughter's leg.  Petitioner Rivera and Rodriguez-Sosa fled the apartment.  Glenda and her daughter survived their gunshot wounds, and Glenda was able to call 911. Police eventually identified petitioner Rivera and traced Rodriguez-Sosa back to petitioner's brother, Pedro.

## B.      Indictment and Convictions

On August 21, 2003, a three-count indictment charged only petitioner Rivera with: (1) the first-degree murder of Carlos Martin-Gonzales while using a firearm, in violation of Florida Statutes §§ 782.04(1)(a), 777.011, and 775.087 ("Count 1"); (2) the attempted first-degree murder of Glenda Badias while using a firearm, in violation of Florida Statutes §§ 782.04(1)(a), 777.04, 777.011, and 775.087 ("Count 2"); and (3) the attempted first-degree murder of the couple's daughter while using a firearm, in violation of Florida Statutes §§ 782.04(1)(a), 777.04, 777.011, and 775.087 ("Count 3").

More specifically, Count 1 charged that, "unlawfully and from a premeditated design to effect the death of Carlos Martin-Gonzales," petitioner Rivera "did shoot . . . Carlos Martin-Gonzales with a firearm, thereby inflicting upon [him] . . . mortal wounds, and by the means aforesaid and as a direct result thereof, . . . Carlos Martin-Gonzales died . . . ."

Count 2 charged that, also "from a premeditated design," petitioner Rivera "did attempt to kill [Glenda Badias] by shooting [her] with a firearm thereby

5

knowingly or intentionally causing great bodily harm or permanent disability or permanent disfigurement to her person." Count 3 charged Rivera with similar attempt liability as in Count 2, but instead cited the couple's daughter as the victim.

Each of these three counts expressly referred to Florida's aiding and abetting statute in Florida Statutes § 777.011. That statute provides that "[w]hoever commits any criminal offense against the state . . . or aids, abets, counsels, hires, or otherwise procures such offense to be committed, . . . is a principal in the first degree and may be charged, convicted, and punished as such . . . ." Fla. Stat. § 777.011 (emphasis added). Because petitioner Rivera had aided and abetted in the shootings of Carlos and his family, Rivera was thus charged as a principal to the crimes under Florida law. See id.

Under Florida law, first-degree murder is a capital felony, and attempted first-degree murder is a first-degree felony. See id. § 777.04(4)(b) (explaining lower offense ranking for completed felony versus one "attempted, solicited, or conspired"); id. § 782.04(1)(a) ("[M]urder in the first degree . . . constitutes a capital felony."). Capital felonies are punishable by death, while first-degree felonies—unless otherwise specified by statute—are punishable by a maximum term of 30 years' imprisonment. Id. § 775.082(1)(a), (3)(b)(1).

6

However, under Florida law, when a person "carries, displays, uses, threatens to use, or attempts to use any weapon or firearm" during the commission of a felony where using a weapon is not an essential element, he or she receives reclassification to a higher felony degree for purposes of sentencing. Id. § 775.087(1). In the case of a crime that is already a first-degree felony, the statute requires the sentencing court to reclassify that crime to a "life felony," which is subject to a life sentence. Id. As to all three counts in the indictment, Rivera was charged with a firearm reclassification. Therefore, as charged in the indictment, Rivera's crimes in Counts 2 and 3 were classified as life felonies, and were both subject to life sentences under Florida law. Id. § 775.082(3)(a)(3).

After a jury trial, Rivera was convicted of first-degree murder on Count 1, attempted first-degree murder on Count 2, and attempted second-degree murder on Count 3. As to Counts 1 and 2, the jury found Rivera guilty "as charged." As to Count 3, it found him guilty of attempted second-degree murder as a lesser-included offense of the charged attempted first-degree murder.

## C.    Sentencing and Direct Appeal

On February 4, 2005, the state trial court sentenced petitioner Rivera to concurrent sentences of life imprisonment without the possibility of parole on Count 1 and life imprisonment on Counts 2 and 3.

Rivera filed a direct appeal with the District Court of Appeal of Florida, Second District ("Second DCA"). In his direct appeal, Rivera argued only that the jury's verdict on Count 1 was not unanimous because, at trial, the government also argued for felony murder as an alternative theory of criminal liability, but the trial court did not instruct the jury on the elements of burglary or robbery. See id. § 782.04(1)(a)(2) (listing predicate felonies that, when directly contributing to the death of the victim, constitute first-degree murder). The Second DCA summarily affirmed Rivera's convictions and sentences on February 24, 2006. Rivera v. State, 923 So. 2d 504 (Fla. Dist. Ct. App. 2006). Thereafter, Rivera filed two separate postconviction motions under the Florida Rules of Criminal Procedure.

## D.    Florida Rule 3.800 Motion to Correct an Illegal Sentence

First, Rivera filed a pro se a motion to correct an illegal sentence under Florida Rule of Criminal Procedure 3.800 ("Rule 3.800"). Rivera alleged that his life sentences on Counts 2 and 3 (but not Count 1) were illegal under Florida law. Specifically, Rivera argued that, without proof that he shot the firearm, his attempted first-degree murder conviction in Count 2 was subject to a maximum 30-year prison sentence and his attempted second-degree murder conviction in Count 3 was subject to a maximum 15-year prison sentence.

The state trial court granted in part and denied in part Rivera's Rule 3.800 motion and, on November 28, 2006, resentenced Rivera to 15 years' imprisonment

8

on Count 3 and life imprisonment without the possibility of parole on Count 2.[2]

Represented by counsel, Rivera appealed this ruling in January 2007, but then

voluntarily dismissed his appeal in August 2007.

## E.    Florida Rule 3.850 Motion to Vacate Sentence

Still represented by counsel, in March 2008, Rivera filed a motion for state

postconviction relief under Florida Rule of Criminal Procedure 3.850

("Rule 3.850").  In his Rule 3.850 motion, Rivera argued that he was denied

constitutionally effective trial counsel.[3]  Rivera did not, however, challenge the

reclassification of his conviction in Count 2 from a first-degree felony to a

life-felony based on the charged use of a firearm.  The Rule 3.850 court granted an

evidentiary hearing on Rivera's Rule 3.850 motion but ultimately denied relief.

---

[2]While the original February 4, 2005 sentence on Count 2 was life imprisonment, the November 28, 2006 resentence judgment imposed a sentence of life imprisonment without parole on Count 2.  That Count 2 sentence was still concurrent with the Count 1 sentence of life without parole.  In this case, Rivera claims his Count 2 sentence should be a maximum of 30 years.  Rivera does not argue about whether his life imprisonment sentence should be with or without parole.

[3]In more detail, Rivera argued that his trial counsel failed: (1) to successfully exclude the testimony of his cellmate, Randy Carr; (2) to call another inmate, Kelly Donaldson, to whom Pedro Rivera admitted that Hector Rivera was not involved in the murder plot; (3) to object to Deputy James Beining's testimony about telephone calls from Pedro Rivera's cellphone; (4) to request a jury instruction about Nestor Pagan Gonzalez's bias; (5) to point out that police asked Randy Carr to seek out more information from Rivera in subsequent conversations, thus making him an agent of the state; (6) to request a jury instruction on the lesser-included offenses for murder and attempted murder; and (7) to object to the trial court's jury instruction regarding Rivera as a principal to murder, despite the fact that Rivera did not shoot anyone.

9

On appeal, on October 24, 2014, Florida's Second DCA summarily affirmed the denial of Rivera's Rule 3.850 motion for postconviction relief.  Rivera v. State, 156 So. 3d 1095 (Fla. Dist. Ct. App. 2014).

## F.    Federal Habeas Petition and the District Court's Order

Rivera then filed pro se a federal habeas petition under 28 U.S.C. § 2254. Rivera's § 2254 petition alleged nine claims,[4] and, ultimately, the district court denied relief.  This Court granted a certificate of appealability ("COA") on "[w]hether the district court erred in denying Claim 3 as (1) procedurally defaulted and (2) without merit."  Accordingly, we address only Claim 3.

In Claim 3 of his § 2254 petition, Rivera alleged that his sentence of life without parole for his attempted first-degree murder conviction in Count 2 exceeded the 30-year statutory maximum sentence for a first-degree felony under

---

[4]Rivera's § 2254 petition alleged the following claims: (1) his trial counsel failed to use law enforcement's investigation to demonstrate Rivera's lack of culpability; (2) the jury instructions were flawed because they did not require the jury to find that Rivera committed the underlying felony; (3) his sentence on Count 2 is illegal because attempted first-degree murder has a maximum sentence of 30 years' imprisonment; (4) his trial counsel failed to impeach the state's witness, Randy Carr, by calling Nicholas Thompson, both of whom shared a cell with Rivera; (5) his trial counsel failed to call Pedro Rivera and Kelly Donaldson as exculpatory witnesses; (6) his trial counsel failed to request Florida standard jury instructions regarding accomplice testimony; (7) his trial counsel failed to object to Randy Carr's testimony on the grounds that Carr had become "an agent of law enforcement"; (8) his trial counsel failed to request an instruction on manslaughter by culpable negligence as a lesser-included offense of murder and attempted murder; and (9) the cumulative effect of trial counsel's failures violated Rivera's constitutional rights.  Rivera later abandoned grounds one, four, five, six, seven, and nine in the district court.

10

Florida law.[5]  Originally, Rivera conceded that he failed to exhaust his state

remedies on Claim 3 by voluntarily dismissing his appeal in his Rule 3.800

proceeding.  Rivera claimed, however, that he lacked postconviction appellate

counsel and so, "unwittingly," he had dismissed his own appeal.  Later, in his reply

brief, Rivera acknowledged that he had appellate counsel in his Rule 3.800

proceeding but claimed that counsel dismissed Rivera's 3.800 appeal without his

knowledge or consent.  Rivera also claimed that his postconviction appellate

counsel told him that the appeal was "unnecessary because he [Rivera] was certain

to have the convictions overturned in the 3.850 proceeding."

In response to Rivera's § 2254 petition, the government stressed that

Claim 3 in Rivera's § 2254 petition was the same claim that Rivera made in his

Rule 3.800 motion.  Therefore, the government argued that Rivera failed to exhaust

that Claim 3 by dismissing his appeal from the denial of his Rule 3.800 motion.

Alternatively, the government argued that Claim 3 lacked merit because the

jury found Rivera guilty of Count 2 "as charged" in the indictment (i.e., that he

used a firearm during the murder and attempted murders).  Likewise, the

indictment expressly charged Rivera as a principal to the crimes under Florida

Statutes § 777.011.  The government also pointed out that Florida courts have

---

[5]While Rivera cited several federal constitutional amendments in support of his other claims, he did not do so with respect to Claim 3.  Rather, Rivera's Claim 3 was a state law claim about what his maximum sentence on Count 2 should be under Florida law.

11

expressly rejected the argument that a jury must make a special finding as to the use of a firearm to support reclassification of a felony under Florida Statutes § 775.087(1).  See, e.g., State v. Iseley, 944 So. 2d 227, 228, 231 (Fla. 2006) (concluding, in aggravated assault context, that jury's verdict finding the defendant guilty "as charged" satisfied "clear jury finding" under § 775.087 "when a charging document allege[d] the defendant used a firearm"); Gentile v. State, 87 So. 3d 55, 57 (Fla. Dist. Ct. App. 2012) (applying same rationale to attempted first-degree murder with a deadly weapon).

In its order dated June 6, 2016, the district court denied Rivera's § 2254 petition and declined to issue a COA.  As to Claim 3, the district court adopted the government's exhaustion, procedural default, and merits arguments.[6]  Rivera timely appealed the district court's ruling.

## II.    DISCUSSION

On appeal, Rivera argues that extraordinary circumstances related to the conduct of his postconviction appellate counsel in his Rule 3.800 proceeding should excuse his failure to exhaust and his procedural default.  On the merits, Rivera claims that his sentence on Count 2 is illegal because a reclassification from a first-degree felony to a life-felony under Florida Statutes § 775.087 requires the

---

[6]We note that the district court incorrectly found that "[t]he only theory supported by the evidence was that Rivera shot all three victims with a firarm [sic]."  Rather, as outlined above, the evidence showed that Rivera was an accomplice to Rodriguez-Sosa's shooting of the victims.

12

use of a firearm, which was never proven with respect to Rivera.  In response, the government argues that Rivera is not entitled to federal habeas relief because: (1) Claim 3 does not impact the lawfulness of Rivera's detention given his life sentence without parole on Count 1 and the concurrent-sentence doctrine; (2) Claim 3 is not properly exhausted; and (3) in any event, Claim 3 is without merit under Florida law.

As to the merits, the government argues, inter alia, that: (1) at trial, it proceeded on the theory that under Florida law, Rivera was guilty as a principal, not that he had personally shot the victim; (2) the jury found Rivera guilty "as charged" of the attempted first-degree murder in Count 2; and (3) the jury's verdict, coupled with the indictment charging Rivera with using a firearm in Count 2, was a sufficiently "clear jury finding" to support a felony reclassification under Florida Statutes § 775.087(1).

## A.    § 2254 Standard

Under 28 U.S.C. § 2254, as amended by the Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA"), federal courts may grant habeas relief on claims previously adjudicated in state court only if the adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).  We review de novo a district court's grant or denial of a habeas corpus petition.  McNair v. Campbell, 416 F.3d 1291, 1297 (11th Cir. 2005) ("The district court's factual findings are reviewed for clear error, while mixed questions of law and fact are reviewed de novo."); see also Trepal v. Sec'y, Fla. Dep't of Corr., 684 F.3d 1088, 1107 (11th Cir. 2012) (applying de novo standard).

At the same time, AEDPA "imposes a highly deferential standard for evaluating state-court rulings and demands that state-court decisions be given the benefit of the doubt."  Trepal, 684 F.3d at 1107 (quoting Hardy v. Cross, 565 U.S. 65, 66, 132 S. Ct. 490, 491 (2011) (per curiam)).

We first discuss whether Rivera properly exhausted Claim 3 in the state courts.

## B.    Exhaustion

A state prisoner must exhaust available state remedies before presenting his claim to a federal habeas court.  Davila v. Davis, 582 U.S. __, __, 137 S. Ct. 2058, 2064 (2017).  Whether the state petitioner has satisfied the exhaustion requirement for federal habeas relief is a mixed question of law and fact.  Fox v. Kelso, 911

F.2d 563, 568 (11th Cir. 1990).  As the Supreme Court explained in O'Sullivan v. Boerckel,

> the exhaustion doctrine is designed to give the state courts a full and fair opportunity to resolve federal constitutional claims before those claims are presented to the federal courts, . . . [so] state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process.

526 U.S. 838, 845, 119 S. Ct. 1728, 1732 (1999).

In this case, however, the district court correctly determined that Rivera failed to exhaust Claim 3 because he did not complete a full round of state appellate review as to this claim.  The only time that Rivera asserted the substance of Claim 3 in state court was during his Rule 3.800 proceeding.  The state trial court denied Rivera's Rule 3.800 motion as to that issue.  Although Rivera appealed that ruling through counsel, he later voluntarily dismissed his appeal before briefing.  Not having heard this issue on appeal, the state appellate court did not receive a "full and fair opportunity" to rule on any constitutional dimension to Rivera's Claim 3 before his filing in federal court.  O'Sullivan, 526 U.S. at 845, 119 S. Ct. at 1732.  Thus, the district court did not err in concluding that Rivera failed to exhaust Claim 3 before filing his § 2254 petition.

## C.    Procedural Default

Although Rivera failed to exhaust Claim 3, we next must decide whether the district court should have dismissed Rivera's petition without prejudice so that he

15

could exhaust Claim 3 in the state courts or whether the district court correctly determined that Claim 3 was procedurally defaulted.  Typically, if a petitioner has not exhausted all claims in a § 2254 petition, the district court must dismiss without prejudice all claims and allow the petitioner to return to state court to exhaust the state remedies for all claims.  Jiminez v. Fla. Dep't of Corr., 481 F.3d 1337, 1342 (11th Cir. 2007).

Conversely, where an unexhausted claim would be subject to a state procedural bar if the petitioner returned to state court, the district court may treat the claim as procedurally defaulted for purposes of federal habeas relief (and thus not allow the petitioner to return to state court) because any future attempts at exhaustion would be futile under state law.  Bailey v. Nagle, 172 F.3d 1299, 1305 (11th Cir. 1999) ("[F]ederal courts may treat unexhausted claims as procedurally defaulted, even absent a state court determination to that effect, if it is clear from state law that any future attempts at exhaustion would be futile."); see Coleman v. Thompson, 501 U.S. 722, 735 n.1, 111 S. Ct. 2546, 2557 n.1 (1991) ("[I]f the petitioner failed to exhaust state remedies and the court to which the petitioner would be required to present his claims . . . would now find the claims procedurally barred . . . there is procedural default for purposes of federal habeas.").  For this analysis, we look to Rivera's two state postconviction motions.

### 1.    Rule 3.800

Under Florida law, Rule 3.800 allows the sentencing court "at any time" after direct appeal to correct an illegal sentence where the "court records demonstrate on their face an entitlement to that relief." Fla. R. Crim. P. 3.800(a)(1).  Yet, Rule 3.800 instructs that a second or successive motion filed under Rule 3.800 should be dismissed where the petitioner "fails to allege new or different grounds for relief and the prior determination was on the merits."  Fla. R. Crim. P. 3.800(a)(2) (emphasis added); see also State v. McBride, 848 So. 2d 287, 290–92 (Fla. 2003) (applying collateral estoppel principles to an identical, successive Rule 3.800 motion and finding no manifest injustice in the application of these principles where the prisoner was serving a concurrent sentence of the same length on another count).

Rivera asserted the substance of Claim 3 in his earlier Rule 3.800 motion, but the state trial court denied relief on the merits and resentenced Rivera to life without parole on Count 2.  Although Rivera appealed that decision to the state appellate court, he later voluntarily dismissed his appeal.  As such, Rivera's future attempts to reassert Claim 3 in a Rule 3.800 motion before the state court would be dismissed as second or successive and would be futile.  Fla. R. Crim. P. 3.800(a)(1).

17

## 2.    Rule 3.850

Rule 3.850 similarly provides that, "at any time," a prisoner may file a motion to vacate a sentence that exceeds the limits provided by law. Fla. R. Crim. P. 3.850(a)(4), (b). Yet, Rule 3.850 instructs the dismissal of a second or successive Rule 3.850 motion raising a new claim where the defendant fails to show "good cause" for the failure to assert that new claim in a prior Rule 3.850 motion. Fla. R. Crim. P. 3.850(h)(2).

Rivera's earlier Rule 3.850 motion did not raise the substance of Claim 3 or challenge the legality of his life sentence in Count 2. Rather, it raised claims about ineffective assistance of trial counsel, which were decided against Rivera on the merits. Thus, any attempt by Rivera to assert Claim 3 in a future Rule 3.850 motion would be a new claim vis-à-vis his earlier Rule 3.850 motion. Here, Rivera has not alleged, much less shown, that good cause existed for his failure to assert Claim 3 in his earlier Rule 3.850 motion. Absent such a showing, future attempts to assert Claim 3 in a Rule 3.850 motion before the state court would also be dismissed as second or successive. Fla. R. Crim. P. 3.850(h)(2).

This leads us to conclude that Rivera would be procedurally barred from reasserting Claim 3 in state court in either a Rule 3.800 or a Rule 3.850 motion. Because Rivera's future attempts at exhaustion of Claim 3 would be futile under Florida's procedural rules, Rivera's unexhausted Claim 3 is also procedurally

18

defaulted for purposes of his federal § 2254 petition.  See Coleman, 501 U.S. at

735 n.1, 111 S. Ct. at 2557 n.1.  We next decide whether Rivera can overcome his

procedural default on Claim 3.

### 3.    Overcoming Default

To overcome procedural default, the petitioner must show "cause" to excuse

the failure to comply with the state procedural rule and "actual prejudice resulting

from the alleged constitutional violation."  Wainwright v. Sykes, 433 U.S. 72, 84,

97 S. Ct. 2497, 2505 (1977); see Davila, 582 U.S. at __, 137 S. Ct. at 2064–65.

To establish the "cause" element, the petitioner must show some "objective factor

external to the defense impeded counsel's efforts to comply with the State's

procedural rule."  Murray v. Carrier, 477 U.S. 478, 488, 106 S. Ct. 2639, 2645

(1986).  Attorney error can constitute an objective external factor, but only when

the error amounted to a deprivation of the constitutional right to counsel.  Davila,

582 U.S. at __, 137 S. Ct. at 2065.  To establish prejudice, the petitioner must show

a reasonable probability that the result of the proceeding would have been

different.  Henderson v. Campbell, 353 F.3d 880, 892 (11th Cir. 2003).

On appeal, Rivera concedes that Claim 3 is procedurally defaulted but

argues that the default should be excused based on the conduct of his

postconviction appellate counsel.  Specifically, Rivera contends that, against his

knowledge and consent, his appellate postconviction counsel dismissed his appeal

of the denial of his Rule 3.800 motion.  Rivera argues that he suffered actual

prejudice because the dismissal allowed his unlawful life sentence on Count 2 to

stand.  Rivera therefore asks that this Court set aside the default on Claim 3.

The problem for Rivera is that, even assuming arguendo his allegations are

true, there is no federal constitutional right to an attorney in postconviction

proceedings.  See Coleman, 501 U.S. at 752–53, 111 S. Ct. at 2566.  Thus,

ineffective assistance of postconviction counsel does not typically provide a basis

for setting aside procedural default, and even less so in the case of appellate

postconviction counsel.[7]  See id.; see Davila, 582 U.S. at __, 137 S. Ct. at 2065

("[I]n proceedings for which the Constitution does not guarantee the assistance of

counsel at all, attorney error cannot provide cause to excuse a default.").  The

district court did not err by concluding that Rivera's Claim 3 was procedurally

defaulted or by refusing to set aside this default.

---

[7]Alternatively, Rivera argues for relief under a narrow exception to this rule, which was articulated in Martinez v. Ryan, 566 U.S. 1, 132 S. Ct. 1309 (2012).  The Supreme Court in Martinez held that ineffective assistance of postconviction counsel at initial-review collateral proceedings can provide cause to set aside a defaulted claim for ineffective assistance at trial only where state law requires a prisoner to raise claims of ineffective assistance of trial counsel in "initial-review collateral proceedings."  Id. at 9, 132 S. Ct. at 1315.  Notwithstanding Rivera's failure to mention Martinez until his reply brief in the district court, Martinez is not applicable to his case.  Rivera is not seeking to set aside the default of an ineffective assistance of counsel claim.  Rather, Rivera challenges the legality of his sentence for attempted first-degree murder with a firearm.  Furthermore, the exception carved out in Martinez applies only where the petitioner alleges ineffective assistance of counsel in an initial-review collateral proceeding, and not in an appeal from such a proceeding.  See Lambrix v. Sec'y, Fla. Dep't of Corr., 756 F.3d 1246, 1260 (11th Cir. 2014).

## D.    Cognizable Federal Habeas Claim

Even without the hurdles of exhaustion and procedural default, we alternatively conclude that, as alleged, Claim 3 does not provide a basis for federal habeas relief.  See Trotter v. Sec'y, Dep't of Corr., 535 F.3d 1286, 1291 (11th Cir. 2008) ("[W]e may affirm on any ground supported by the record." (internal quotation marks omitted)).  The writ of habeas corpus is a mechanism to safeguard federal constitutional rights, not to impose our own interpretation on matters of pure state law.  See Cabberiza v. Moore, 217 F.3d 1329, 1333 (11th Cir. 2000); Carrizales v. Wainwright, 699 F.2d 1053, 1054–55 (11th Cir. 1983) ("Questions of pure state law do not raise issues of constitutional dimension for federal habeas corpus purposes.").

In his § 2254 petition, Rivera alleged only that, under Florida law, his sentence for attempted first-degree murder carried a maximum punishment of 30 years' imprisonment as a first-degree felony.  Specifically, he alleged that "[i]n Florida, attempted first-degree murder constitutes a first-degree felony punishable by a maximum of [30 years'] imprisonment."  In his Rule 3.800 motion, Rivera similarly alleged that, under Florida Statutes § 782.04, attempted first-degree murder is a first-degree felony subject to a maximum of 30 years in prison, and thus Rivera's sentence "exceeds the statutory maximum prescribed by law."

21

The issues of whether Rivera's reclassification was justified under Florida Statutes § 775.087(1), or whether he was properly tried as a principal to these crimes under Florida Statutes § 777.011, are purely matters of state law.  See Cabberiza, 217 F.3d at 1333.  Rivera's Claim 3 alleged no federal or constitutional ground for overturning the sentence on his Count 2 conviction.  Instead, Rivera relies solely on state-law grounds in challenging the state trial court's determination as to his sentence on Count 2 and reclassification under Florida law, and such issues are not the subject of federal habeas corpus review.  See Carrizales, 699 F.2d at 1054–55; Iseley, 944 So. 2d at 231; Gentile, 87 So. 3d at 57.

## III.    CONCLUSION

For all of these reasons, we affirm the district court's denial of Rivera's § 2254 petition.

**AFFIRMED.**